# Robertson *v.* Robinson.

*Action for Money Had and Received, by Deputy Tax-Assessor against Tax-Collector.*

1.   *What is revisable.*—It is not the practice of this court, in a case of which the lower court had jurisdiction, to consider any other matter than that which was there acted on, and its action here assigned as error.

2.   *Validity of contract; parol and written stipulations.*—In determining the validity of a contract, on which an action is brought, on grounds of public policy, the court will inquire into the whole transaction from its origin, and will not be embarrassed or hindered by the particular form in which it was reduced to writing, or the expressions used in the writing; nor does the writing operate an estoppel on the party sought to be charged, from showing the true character of the transaction.

3.   *Contract relating to public office.*—A contract between plaintiff and a person who was a candidate for the office of county tax-assessor, which had its origin in a proposal made by the latter to plaintiff on the morning of the election day, to the effect that, if elected, he would appoint plaintiff his chief deputy, and pay him an annual salary of $2,500 from the fees and perquisites of the office, if plaintiff would make his official bond for him, and would perform all the duties of the office except such as relate to the poll-tax; which proposal was accepted, and the contract afterwards reduced to writing,—is void on grounds of public policy, and will not support an action.

APPEAL from the City Court of Montgomery.

Tried before the Hon. JOHN A. MINNIS.

This action was brought by William G. Robertson, against

Patrick Robinson, and was commenced on 24th September, 1878. In his complaint the plaintiff claimed $2,000, "due from said defendant by account on the 1st May, 1878, for money had and received by defendant, for the use of the plaintiff, during the year 1877, and during the year 1878, prior to said 1st day of May; which sum of money, with interest thereon, is due and unpaid." The record does not show what pleas were filed. On the trial, the plaintiff took a nonsuit, with a bill of exceptions, in which the facts are thus stated : " The plaintiff was introduced as a witness, and testified, that at the general election in November, 1874, the defendant was elected tax-collector of Montgomery county, for the term prescribed by law, and duly qualified, and performed the duties of said office until—, 1878; that one George W. Sewell was duly elected tax-assessor of said county at said election, for the term prescribed by law, and duly qualified as such ; that on the 17th November, 1874, plaintiff and said Sewell entered into a contract, to which said defendant was one of the subscribing witnesses, a copy of which is hereto attached as an exhibit," being as follows :

" State of Alabama, Montgomery County : This agreement, made and entered into this 17th November, 1874, between George W. Sewell, tax-assessor, party of the first part, and Wm. G. Robertson, party of the second part, witnesseth : The party of the first part agrees to pay the party of the second part the sum of $2,500 *per annum*, during his term of office as assessor as aforesaid, on condition that the party of the second part will faithfully and properly assess the real and personal property of the county, including insurance companies, &c., and make the necessary assessment-books required by law ; the above sum of $2,500 to be paid by the tax-collector to the said William G. Robertson, out of the perquisites of said office of tax-assessor. The party of the first agrees to assess the poll-tax, and to make out the poll-book." (Signed by said Sewell and W. G. Robertson, and attested by Pat. Robinson and Robert Barber.)

" The plaintiff introduced evidence that he had performed the duties required of him by the terms of said contract, for the tax-years 1874-5, 1875-6, 1876-7; that the defendant, without any other order from Sewell than that contained in said written contract, paid to plaintiff, for the first two years of the term, the amount agreed to be paid by said contract, except that, at the instance of the defendant, about the time of the payment for the year 1875-6, the plaintiff relinquished $225, and instructed the defendant to pay that sum to said Sewell. The testimony tended to show that, in December,

[Robertson v. Robinson.]

1877, defendant requested plaintiff to take less than $2,500 from Sewell, on account of the office of tax-assessor having become less profitable; that plaintiff thereupon told defendant that he would take $2,000, instead of $2,500, as named in the contract; and that Sewell was present, and assisted in the defendant's request. The testimony further showed that in ——— , 1878, defendant refused to pay plaintiff, unless plaintiff would get an order from said Sewell; that plaintiff said there was no necessity for any more orders than the contract, and that defendant had paid for the two years previously without any other order, but finally agreed to get an order; that thereupon defendant himself wrote the order, and handed it to plaintiff, signed by Sewell." The order was produced, and it is made an exhibit to the bill of exceptions. It is dated the 4th December, 1877; is signed by said Sewell, with the words added "Tax-assessor of Montgomery county"; is addressed to "Pat. Robinson, tax-collector of Montgomery county"; directs him to "pay to W. G. Robertson, or order, all the balance of commissions and fees, which may be due me as tax-assessor of said county for the year 1877, and this order will be your receipt for the full amount you pay him"; and across the face of it are written the words, "Accepted, December 4th, 1877," with defendant's name subscribed, and the words added, "Tax-collector M. C."

"The testimony showed, also, that the defendant paid on this order $415; and that the plaintiff gave the defendant, as tax-collector, a receipt for $2,500 for the second year, although he only received $2,275, directing defendant to pay the balance to Sewell. Plaintiff also testified, on cross-examination, that while said Sewell was a candidate for tax-assessor of said county, at said November election, 1874, and on the morning of the election, said Sewell came to him, and proposed, if he (S.) was elected, that he wanted witness to make his bond as tax-assessor, and to act as his chief deputy, and to take charge of the office; that he replied to this proposition, that he would think about it; that he heard nothing further from Sewell after his election, in regard to the matter, until the day on which the time expired within which Sewell was required to file his bond, when Sewell remembered the proposition, and told him that, if he would make the bond, and take charge of and manage the office, and perform all the duties of such tax-assessor, except to assess the poll-tax, he should receive, as compensation for his said services, $2,500 *per annum* out of the perquisites of the office; that he accepted this proposition, and made the bond for Sewell, and said written contract was

[Robertson v. Robinson.]

executed; that he assessed the taxes of the county under said contract, except the poll-taxes, for the whole of said Sewell's term as assessor, and received his compensation for the two years first ensuing, as above stated; and this suit is brought to recover the third year's compensation under said contract.

"It was agreed by counsel, when plaintiff first began to testify, that he should proceed with his testimony, and the introduction of the written contract; and that the defendant should have leave to move to exclude any or all of the testimony, after it was introduced to the jury. It was proved, also, that the commissions and fees of the tax-assessor, for each year of the term, amounted to between $3,000 and $4 000; that the fees and commissions of the assessor, for the year 1877–8, had been collected by the defendant, before the plaintiff demanded payment of it; and that the defendant refused to pay, either under the contract, or under the order, except as above stated. This was all the testimony introduced by the plaintiff, and the defendant introduced none, except what was drawn out on cross-examination of plaintiff's witnesses. Thereupon, the defendant moved to exclude from the jury, 1st, the said written contract; and, 2d, the said contract in connection with the testimony tending to show a change in said contract in December, 1877; on the ground that said contract, taken by itself, or in connection with said testimony, was illegal and void." The court sustained these motions, and excluded the evidence, to which rulings the plaintiff excepted, and was compelled thereby to take a nonsuit; and he now assigns these rulings as error, and moves to set aside the nonsuit.

WATTS & SONS, for appellant.—The contract between Sewell and Robertson is not violative of any statutory provision, nor assailable on grounds of public policy. It was not a sale of the office of tax-assessor, for Sewell was to perform certain specified duties. It simply provided for the appointment of a deputy, who was to discharge some of the duties of the office, and was to receive a fixed sum as his compensation, payable out of the lawful fees of the office; and the deputy agreed, in addition to discharging the duties required of him, to make the official bond of the assessor. The assessor is authorized to appoint a deputy, and is responsible for his acts (Code, § 397); and he is required to give bond for the faithful discharge of all the duties of the office. It could not have been contemplated that the deputy should serve without compensation; and there can be nothing wrong, in law or morals, that he should stipulate to be paid

for his services out of the fund which he has mainly contributed to earn.    Since the assessor is required to give bond, and is made responsible for the acts of his deputy, it does not seem at all improper that the deputy should be surety on his bond, or should " make his bond," thereby making each of them liable for the acts of the other.    The appointment of a deputy, and the making of an official bond, were lawful acts on the part of Sewell; and it could not be unlawful for plaintiff to assist in the performance of those lawful acts.    The authorities fully sustain the validity of the contract.—Addison on Contracts, 105 ; Benjamin on Sales, 2d ed., 440–41 ; *Godolphin v. Tudor*, 2 Salk. 268, mar. ; *Salling v. McKinney*, 1 Leigh, Va., 54 ; *Brainerd v. DeForest*, 2 Day, 528.

R. M. WILLIAMSON, *contra*.—The plaintiff could not recover in this case, even if his contract with Sewell were valid ; because the money in the hands of the defendant which he seeks to recover, and out of which, by the terms of that contract, his compensation was to be paid, was a part of the public revenue, State and county, so long as it remained in the hands of the tax-collector ; and the statute expressly provides that the deputy shall not be paid out of that revenue. Code, § 397.    But the contract itself is void, on grounds of public policy, and will not support an action.—*Parsons v. Thompson*, 1 H. Bla. 322 ; *Garforth v. Fearon, Ib.* 328 ; *Nore v. Fisher*, 3 Call, 215 ; *Salling v. McKinney*, 1 Leigh, 42. The court will look at the entire transaction between the parties, without regard to the particular form of the writing.—*Hudson v. Milner*, 12 Ala. 667 ; *Tenison v. Martin*, 13 Ala. 21.

BRICKELL, C. J.—When the primary court has jurisdiction, it is not the practice of an appellate court, to consider any other matter than such as may have been acted on in the court below, and the action assigned as error.    Other matters which may be suggested, or which are apparent on the face of the record, and which, if attention had been directed to them in the primary court, would or could be presented in a different aspect, it would be injustice to make the basis of decision.    In the present case, the contention in the City Court was limited to the validity of the agreement between the appellant and George W. Sewell.    No other question was considered or passed upon ; and it is that question only we propose now to decide.

All agreements or contracts, having for their object that which is repugnant to public justice, or violative of public policy, or offensive to good morals, or contrary to statutory

provisions, or in derogation of the principles of the common law relating to the public peace or security, and injurious to the community, are void; " and the reason why the common law says such contracts are void, is for the public good." The agreement between Sewell and appellant, it is insisted, falls within this general principle, because, in fact, it was a sale of the office or employment of deputy tax-assessor of the county of Montgomery. Whether this is the real character of the agreement, and, if it be, whether it is offensive to law, and violative of public policy, requires that the whole transaction should be inquired into and considered. The form of the agreement, and the expressions embodied in the writing to which it was reduced, are only matters of evidence, not operating an estoppel upon the parties, and not embarrassing or hindering the court. If it were otherwise —if the manner of the transaction could *gild over and conceal the truth*, this great conservative principle of the law, essential to the purity of the administration of justice, of public morals, and the general welfare, would be evaded at the pleasure of the designing, the wicked, and the corrupt.

The county assessor of taxes is a public officer, elected by the qualified voters of the county, commissioned by the governor, required to take the oath of office prescribed by the constitution to be taken by all public officers, the highest or lowest, and charged with duties of great importance to the public and to the citizen—duties not only ministerial, but in their nature, in some respects, judicial. He has authority to appoint deputies, whose acts have the force and effect of his official acts, and for whose good conduct he is responsible.—Code of 1876, § 397. The deputy appointed by him, not for a mere particular case, or for a mere casual, special service, is required to take the constitutional oath of office. The statute authorizing his appointment, requiring him to take the oath of office, distinguishing between him and one whom the assessor may appoint to a special service, places him, in many respects, as a public officer.

The transaction between Sewell and the appellant had its origin on the day of, and pending the election of a tax-assessor for the county of Montgomery, in November, 1874. It commenced by a proposition made by Sewell to the appellant, in substance, that if Sewell, who was a candidate for tax-assessor, was successful, he would appoint the appellant his chief deputy, and pay him from the fees and perquisites of the office twenty-five hundred dollars annually, if the appellant would make for him his official bond, and perform all the duties of the office, except such as related to the assessment of the poll-tax. The proposition was accepted, and

[Robertson v. Robinson.]

it is this agreement the subsequent writing was intended to embody, and which the parties treated as embodying.

Of such an agreement, in the strong language of Chief-Justice Wilmot, in *Collins v. Blantern*, 2 Wils. 341 (1 Smith's L. C. Pt. 2, 673), it may be said, that it "is void *ab initio*, by the common law, by the civil law, moral law, and all laws whatever." It concerns a place of public trust, in which the public have high interests, involving the performance of public duties, and which can not be made the subject of traffic, and can not become the matter of trade and bargaining. It was corrupting the appellant as a voter, bound by his duty to cast his vote from public, not private considerations, on the eve of the election to make such a proposition; tempting him to merge his duty as a citizen in the promptings of mere selfishness, in the gratification of his avarice. It was bargaining away the discretion in the appointment of a deputy, which Sewell was bound to exercise for the public good, and not for the promotion of his private interest or convenience. It was an irrevocable appointment, continuing during the term of office, which was contemplated, fettering the power of appointment with which Sewell was clothed by law. In fact, it was a sale of the office of deputy, and the consideration was not only the services the appellant was expected to render, but the making of the official bond. The people of Montgomery county, trusting to the integrity and good judgment of Sewell, elected him to the office of assessor of taxes. Their confidence was repaid by his transfer to the appellant of every duty not merely ministerial, attaching to the office, in consideration really of ease and convenience in making the official bond. It would be far better that public trusts, public offices, or the deputations to them, should be exposed at public auction to the highest, or to the lowest bidder, than that they should become the subject of such private bargaining and traffic. We cite numerous authorities, which it is unnecessary to review specially, and in which the bargaining away of public offices, or of deputations to them, have been pronounced void.—2 Chit. Contr. 990 ; 1 Addison Contr. 262, 266 ; *Hanington v. Duchatell*, 1 Brown's C. C. 124 ; *Morris v. McCulloch*, Ambler, 455 ; *Lee v. Coleshill*, Cro. Eliz. 529 ; *Garforth v. Fearon*, 1 H. Black. 328 ; *Godolphin v. Tudor*, 2 Salk. 468 ; *Greenville v. Atkins*, 9 B. & C. 462 ; *Tappan v. Brown*, 9 Wend. 175 ; *Gray v. Hook*, 4 Conn. 449 ; *Haralson v. Dickens*, N. C. L. R. 66 ; *Grant v. McLester*, 8 Geo. 553 ; *Lewis v. Knox*, 2 Bibb. 453 ; *Outon v. Rodes*, 3 A. K. Marsh. 453.

No judicial tribunal, so far as we can discover, has ever given countenance to any such agreement ; and if popular elections are to be kept free from the taint of selfishness and

[Davis v. Cook.]

corruption—if public offices are to be dignified as public trusts, and the performance of official duty preserved from the contamination of unlawful and improper influences, all such agreements will be condemned.

The validity of the agreement was the only question presented to, and decided by the City Court, and the manner of presenting it was matter of agreement between the parties. The court did not err in pronouncing the agreement void, and its judgment is affirmed.