Davis, J.,
delivered the opinion of the court:
These cases involve substantially the same transactions. Hedrick was a supervisor of internal revenue from February, *100 1871, to June, 1876. Being authorized to employ a clerk at a salary of $1,500 per annum, he employed Warden, who was at the same time in the employ of the United States as a gauger. Between June, 1873, and July, 1875, Warden exercised both functions, and was paid his full salary as clerk, $2,938.78, and his full salary as gauger, $1,784.42. After June, 1873, the United States retained from Hedrick’s allowance for clerk hire $1,250 charge^, by him as Warden’s salary as clerk, and $23.50 charged by him as Warden’s expenses as clerk. These items were for services rendered and expenses incurred by Warden as clerk after June, 1875.
Warden now sues to recover these sums and a further sum of $126.87, which he says was earned by him as gauger and is unpaid.
' The Attorney-General requested us to find, and we have found, that Warden, in his capacity of clerk, did not take the oath prescribed in Title XIX of the Revised Statutes. The statute requires that oath to be taken by every person elected or appointed to any office, whether of honor or profit. (Rev. Stat., § 1756.) If a supervisor’s clerk was an “officer,” the defect is fatal, and goes to the root of this branch of the case; but Warden, as clerk, was not an officer and, therefore, was not, in that capacity, subject to the provisions of this section.
The government, on the authority of the case of Herndon v. United States (15 C. Cls. R., 446), resists the payment of the $1,273.50 to Warden on the further ground that there is no privity of contract with him. In that case we decided that where the Secretary of the Treasury had, under the provisions of section 3145 of the Revised Statutes, made an allowance to an internal-revenue collector for the purpose of having it applied to the payment of a deputy collector appointed under the provisions of section 3148 Revised Statutes, there was no privity of contract between the deputy and the United States. The provisions under which Hedrick was authorized to appoint Warden as clerk are not in all respects like those under which Landram appointed Herndon. The language of the statute is: “Every supervisor shall be entitled to receive, in addition to expenses necessarily incurred by him and allowed and certified by the Commissioner, such salary,” &c. (Rev. Stat., § 3160.) TheOom-missioner of Internal Revenue authorized him to appoint and pay a clerk as part of his necessary expenses. An expense *101 necessarily incurred by tbe supervisor was not an expense necessarily incurred by tbe government. Tbe supervisor was primarily liable for it, and tbe government, by tbe statute and through tbe Commissioner, consented to reimburse him to tbe extent of tbe allowance. In this there was no more privity of contract between tbe United States and a supervisor’s clerk than there was between them and a deputy collector, and on tbe authority of Herndon’s Case we bold that Warden cannot recover on that branch of bis case.
Hedrick also sues to recover tbe same sum, and bis counsel contend that bis case is in all respects similar to Landram’s, just decided. (Ante, p. 74.) There is, however, this difference between tbe two cases. Herndon was not an officer of tbe United States; Warden was one. (Eev. Stat.,§ 3156). Ifwebad any doubt that be was made an officer by force of tbe section we have cited, tbe doubt would be removed by tbe language of section 3267, where a gauger is repeatedly styled an ‘‘officer.”
Although an officer of tbe United States while acting as gauger, Warden was not an officer while acting as supervisor’s clerk. Therefore, tbe provisions of section 1763 of the Eevised Statutes, which refer to tbe discharge of tbe duties of two offices by tbe same person, do not refer to bis case.
Nor was be a departmental clerk in either capacity; therefore be is not affected by tbe provisions of section 1764 Eevised Statutes.
Section 1765 relates to an officer or any other person in a branch of tbe public service. As a gauger be was an “ officer,” and as a clerk be was a “ person” in a branch of tbe public service.
Tbe “salary,” “pay,” or “emoluments” of such “officer” or “person” must be “fixed by law or regulation,” in order to bring him within tbe provisions of this section.
A “ salary” is “fixed” when it is at a stipulated rate for a defined period of time. A “ pay” or “ emolument” is “ fixed” when tbe amount of it is agreed upon and tbe service for which it is to be given is defined. A salary, pay, or emolument is fixed by law when tbe amount is named in a statute; and by regulation when it is named in a general order, promulgated under provisions of law, and applicable to a class or classes of persons.
As clerk, Warden enjoyed a “salary” which was “fixed”; *102 but we have already held, inLandram’s Case, that such a salary was not “ fixed by law or by regulation.”
As gauger, Warden did not receive a “salary,” but he received “pay,” or “emoluments,” which the Supreme Court regard as the more comprehensive term. (Hoyt v. The United States, 10 How., 135.) Prior to the Act June 20, 1874 (18 Stat. L., 93), he was entitled to his traveling expenses and such fees, to be determined by the quantity gauged, as might be prescribed by the Commissioner of Internal Revenue. (Rev. Stat., § 3157.) That act fixed six dollars a day a the maximum which a gauger could receive under the provision in the Revised Statutes. The source from whence the pay was to be derived was indicated by the statute; but the “ pay” itself was not “ fixed” by law. That the statute left to be “ fixed” by an act.of executive discretion. This executive act could be done either by special instructions or by general regulation. It appears by the findings that the employment of Warden as gauger, and the rate of his compensation were authorized by a general regulation, and that his case therefore comes within the provisions of section 1765 of the Revised Statutes.
On the 20th June, 1874, in the legislative, executive, and judicial appropriation act of that date, it was enacted—
“That no civil officer of the government shall hereafter receive any compensation and perquisites, directly or indirectly, from the Treasury orproperty of the United States, beyond his salary or compensation allowed by law.” (Act June 20,1874, 18 Stat. L., p. 101, ch. 328, § 3.)
The effect of this provision upon officers within its scope is well described in the words of the Supreme Court respecting another statute with a similar object. They say, “ It is impossible to misunderstand this language, or the purpose and intent of the enactment. It cuts up by the root these claims by public officers for extra compensation on the ground of extra services.” (Hoyt v. The United States, 10 How., 141.) This very language was repeated and affirmed by the court in Shoemaker v. The United States (7 Wall., 338), where we have the authority of Mr. Justice Nelson, who formed one of the majority of the court in Converse v. The United States (21 How., 463), that it was also affirmed in the latter case. (See also Stansbury v. The United States, 8 Wall., 33.)
The act of 1874 relates only to civil officers. As a clerk, War *103 den did not come within its terms. As gauger be was a ciyil officer, and is forbidden by tbe act to receive from tbe Treasury or property of tbe United States any compensation and perquisites beyond tbe salary and compensation allowed by law to bim as gauger.
No claim is made for “ perquisites”; and it is not maintained tbat any “ salary” is allowed bim by law as gauger. Tbe inquiry under this act is, therefore, narrowed to this: whether a compensation from fees, to an amount to be prescribed by tbe Commissioner of Internal Eevenue, not to exceed six dollars a day, is a compensation allowed by law. We have no doubt tbat it is. ' Tbe amount (within tbe limit) is to be “ fixed” by tbe Commissioner, but tbe Commissioner’s authority to fix it, tbe Comptroller’s authority to pass it, and tbe Treasurer’s authority to pay it are “ allowed by law.”
Thus it appears tbat during tbe whole period during which Warden served as gauger be was subject to tbe provisions of section 1765 of tbe Eevised Statutes, and tbat from tbe 20th June, 1874, be was subject to tbe provisions of tbe act of tbat date. It is therefore clear tbat even if there were a privity of contract between Warden and tbe government for bis services as clerk, Warden could not recover for them. He cannot do indirectly through Hedrick what be might not do directly in bis own person.
He ceased to be a gauger on tbe 11th November, 1875. For a few weeks prior to tbat date be did no work as gauger, and received no pay. But tbe non-receipt of pay was tbe inevitable result of tbe non-performance of work, and does not affect bis statutory disability to take pay for tbe performance of other work for tbe government, so long as be held tbe office of gauger.
Tbe government claims, in tbe form of a counter-claim, to recover back all tbe dual compensation so paid. Some of tbe principles governing tbe right of recovery in such cases have been considered in this court and in tbe court above.
Neither claimant is here seeking to reopen a settlement closed by a payment, as was the case in McKee v. The United States (115 C. Cls. R., 560); McElrath v. The United States (102 U. S. R., 426). “There was nothing contrary to good morals or conscience in tbe payment or receipt of tbe money. Tbe facts were all known. There was no indirection, concealment, or *104 improper purpose on either side.” (McKnight v. The United States, 98 U. S. R., 185,186.) In allowing the payments, the Treasury officers acted strictly within the scope of official authority and discretion. (The United States v. The Bank of the Metropolis, 15 Pet., 401.) The simple question before us is whether a settlement made by parties in good faith under a mistaken construction of the statute can be reopened by one party without the consent of the other, so as to allow money paid under it for services actually rendered, at an honest valuation, to be recovered back. The doctrine governing similar transactions between individuals is thus stated by an elementary writer:
“ If the plaintiff were merely ignorant of the law or legal effect of all the circumstances under which he paid the money, and had a full knowledge of the facts, or such reasonable means of ascertaining them that he must be supposed to have been acquainted with them or to have been guilty of laches in not acquiring the information, he cannot recover back the money so paid j but if he were mistaken as to a material fact, and were .not possessed of such means of information, he is entitled to a return of money paid by him under or in consequence of such misapprehension.” (Oliitty on Contracts, 627, 628.)
In the present cases it appears that Richard H. Warden, residing in Ottumwa, Iowa, was at the same time and for many months in the employ of the Commissioner of Internal Revenue in the same district in two capacities j and that during all that time his signature passed monthly into the Treasury as vouchers for payments to him in each capacity. There was enough in this to put the government on its guard, and to give the claimants the benefit of payments made with knowledge of the facts, though under mistake of law.
The government invokes the benefit of the provision in section 1766 Revised Statutes, that “no money shall be paid to any person for his compensation who is in arrears to the United States until he has accounted for and paid into the Treasury all sums for which he is liable.” But this provision applies only to cases in which the party is liable to the United States. We hold that neither Hedrick nor Warden is liable to them for moneys paid and received under the circumstances shown in this case, which takes the counter-claims out of the operation of section 1766 of the Revised Statutes.
The Attorney-General in his ingenious argument raises a *105 final objection, which, like the one which he raised in the beginning, goes to the root of the right to recover on account of the services and expenses as clerk.' The statute provides that every supervisor shall be entitled to receive the expenses necessarily incurred by him and allowed and certified by the Commissioner.- It is contended that this language makes the Commissioner the final judge as to what expenses are necessary, and as to what have been incurred; and that without his allowance and certificate no recovery can be had for them here.
The statute contemplates two acts by the Commissioner. The first act is the allowance of the expenditure; that is absolutely essential, and without it the claim could not be paid at the Treasury, or judgment given for the claimant here. In the second finding it appears that that act was done.
The second act contemplated by the statute is the Commissioner’s certificate that the expense was incurred. This we have in the eighth finding as to a large part of it; and it appears by the second finding that they were actually incurred as to the remainder, and the reason for the refusal to pay all appears in the fifth and eighth findings. The Commissioner’s certificate may have been necessary with the accounting officers of the Treasury; but we entertain no doubt of our right to receive other evidence that the work was done, and to sit in review upon the merits of the reasons given for refusing to pay for it.
This objection being disposed of, and the counter-claim being set aside, it follows that Hedrick is entitled to recover for the amount of services rendered by Warden as clerk after the 11th day of November, 1875, when he resigned his office as gauger.
It also follows that Warden in his suit is entitled to recover compensation for his services as gauger for such time as he has not been paid. He claims for August, 1875; but it appears that he was paid for his services during that month as clerk a larger sum than he would have been entitled to receive as gauger. He also claims for September, 1875; it appears that his pay as gauger and as clerk were both refused during that month. He is entitled to recover his compensation as gauger during the month of September only.
The judgment of the court in Warden’s case is that the claimant recover the sum of $48.47, and that the defendants’ counter-claim be dismissed.
*106 The judgment of the court in Hedrick’s case is that the claimant recover the sum of $826.12, and that the counter-claim be dismissed.
Hunt, J., was absent by reason of illness when these cases were tried, and took no part in the decision.