[The State v. Sanders.]

# The State *v.* Sanders.

*Assumpsit.*

(Decided May 19, 1914.   65 South. 378.)

*Officers; Salary; Increase During Term.*—The State Health Officer, while an officer of the board is not a state, county or municipal officer within the meaning of section 281, Constitution 1901, and hence, there is no inhibition upon the increase or diminution of his salary during the time for which he was elected or appointed. (See sections 698, 702 and 704, Code 1907.)

APPEAL from Montgomery City Court.

Heard before Hon. GASTON GUNTER.

Suit by the state of Alabama against W. H. Sanders as State Health Officer, to recover excess of salary. Judgment for defendant and the state appeals. Affirmed.

R. C. BRICKELL, Attorney General, and T. H. SEAY, Assistant Attorney General, for the State. The office of State Health Officer is a public office.—*United States v. Morris,* 2 Brock. 96; *Bradford v. Justices, etc.,* 33 Ga. 333; §§ 698, 702 and 704, Code 1907. This being true, any authority to increase or diminish the salary during the term of office is rendered void because violative of § 281 of the Constitution.

TYSON & ARRINGTON, and T. M. STEVENS, for appellee. Unless it appears that the executive officer of the State Board of Health is a public officer, of course § 281 of the Constitution is without application. As to the tests invariably applied for the purpose of determining that question, see *Montgomery v. State,* 107 Ala. 372; 40 Mich. 673; 17 A. & E. Ann. Cases, 449; 23 A. & E. Enc. of Law, 324; Mecham on Public Offices, §§ 1, 3, 4 and

37. Before the courts can say that a law is changed the legislative intent to change it must be clear and evident. —*Bradley v. State,* 69 Ala. 322; *Lindsey v. U. S. S. & L. Co.,* 127 Ala. 371.

MAYFIELD, J.—The state brought suit against appellee to recover of him the sum of $2,333.10. This sum was claimed by the state to be due as for the amount paid appellee by the state board of health in excess of his salary authorized by law.

Whether there was any excess paid appellee depended upon whether or not the state board of health had the authority to increase his salary or compensation during the term of office for which he had been previously elected. Whether the board had authority to make the increase of salary or compensation during the term for which appellee was elected depended upon the question whether or not appellee was an "officer holding any civil office of profit under this state," within the meaning of section 281 of the Constitution of 1901.

It is conceded that a correct answer to this last question will fully determine the rights of the parties to this appeal. The lower court held that appellee was not an officer, within the meaning of said section of the Constitution. That section reads:

"The salary, fees, or compensation of any officer holding any civil office of profit under this state or any county or municipality thereof, shall not be increased or diminished during the term for which he shall have been elected or appointed."

Section 698 of the Code provides as follows:

"The Medical Association of the state of Alabama, organized in accordance with the provisions of the Constitution adopted at the annual meeting of the association, held in Tuscaloosa in March, 1873, and confirmed

[The State v. Sanders.]

by an act of the Legislature approved February 19, 1875, is the state board of health."

Section 702 of the Code contains, among others, the following provision:

"The state board of health shall have general control over the enforcement of the laws relating to the public health," etc.

Section 704 of the Code, among other things, provides as follows:

"The state board of health shall elect an executive officer, to be known as the state health officer, and shall fix his term of office and salary, provided that the latter shall not exceed five thousand dollars per annum. The state health officer so elected shall, under the direction of the state board of health, exercise general supervision over the county boards of health and county and municipal health officers, etc."

Appellee was elected, under the above Code provisions, in the year 1909, and his term was by the board fixed at five years, and his salary or compensation at $4,200 per annum. Before the expiration of this five-year period the board increased his compensation to $5,000 per annum. Was this last act of the board in violation of section 281 of the Constitution? If it was, then the state is entitled to recover back of him the excess paid over and above the amount of $4,200 per annum.

An examination of the health and quarantine laws of this state will show that the state board of health is given general control over the enforcement of all laws pertaining to that department of government; and that full power is given the board to make rules and regulations with reference to the administration of the health and quarantine laws. As a part of the board's authority and power to make rules and regulations, it is given the authority to employ a clerk, but his salary is fixed

by the statute at $1,200 per annum.—Code, § 699. The board is also authorized to elect an executive officer to be known as the state health officer, and invested with the power to fix both his term of office and his salary; but the statute places a limitation upon this power— that the salary shall not exceed $5,000 per annum.

Does the law make the "state health officer" an officer, within the meaning of section 281 of the Constitution? That appellee is an officer is undoubted; but whether he is an officer within the sense in which that word is used in this provision of the Constitution is not free from doubt. It is the will of the Constitution makers which we must ascertain, if we can, and our duty, if we can ascertain it, to declare that as the Supreme law,

This provision was intended to stop a practice, which had long prevailed in the state, of changing the salaries, fees, and compensation of state, county, and municipal officers during the term for which they were elected, and thus to secure some stability and certainty as to the amount of compensation such officers should receive, at least during the given terms for which they were elected. The provision, no doubt, was intended to take away from officers, when elected, the hope and the possibility of having their salaries increased, as well as to take away from those who opposed them, and from the public whom they serve, the opportunity and the inducement of having their salaries *decreased*. The word "officer," as used in this provision of the Constitution, was unquestionably intended to include all state, county, and municipal officers not specially excepted by other provisions of the Constitution, such as those expressly dealing with the salaries and compensation of some judicial officers.

Is appellee, then, a state, county, or municipal officer? He is expressly named in the statute as an offi-

cer; but does the word, as used in the statute, have the same meaning which it has in the Constitution?

There are a great many corporations, private, public, and quasi public, which have many officers, and they are spoken of and denominated in the statute as *officers;* but it is certain that they are not state, county, or municipal officers, within the meaning of section 281 of the Constitution  Most all private corporations, as well as quasi public corporations, are by statute given express authority to elect officers; but surely they are not officers within the meaning of this provision of the Constitution.  Most all churches which are incorporated by special statute, or the incorporation of which is provided for by general law, are expressly authorized by the statutes to elect officers, but surely such officers are not included in the constitutional provision in question.

Nearly all statutes which, like the ones in question, create public boards or commissions for the management and control of the various departments of government expressly provide for the election or appointment of officers, agents, employees, and servants.  The mere fact that these appointees are called *officers* rather than employees, or that the statute says they shall be *elected* rather than appointed or hired, does not make such persons so appointed or elected *officers,* within the meaning of section 281 of the Constitution.  It is true that they may be officers, but they are officers of the board or commission which appoints or elects them, and not of the public, the state, the county, the municipality, within section 281.  It is in this sense, we think, that the statute in question speaks of appellee as the "state health officer." He is made the officer of the board which elects him, and which is by law charged with the duty of executing and administering the laws of the state pertaining to the health and quarantine department of

the state government. He is not an officer of the state, county, or municipality, within the meaning of section 281 of the Constitution. No part of the sovereign power of the state is by the statute delegated to appellee, although he is named in the statute as the "state health officer." The delegation of such authority and power is to the "state board of health," which is appellee's creator and master, whom he serves. He does not serve the state; he serves the board which elects him. That statute expressly provides that whatever he does he shall do "under the direction of the state board of health." The statute does not fix his term of office nor his salary or compensation, nor does it put any limitations upon either, except that the salary shall not exceed $5,000 per annum. The board may employ him for a day, a week, a month, a year, or any number thereof, and pay him $1 per day, per week, per month, per year, or any other sum, provided the salary does not exceed $5,000 per annum. There is no constitutional or statutory requirement that the board shall elect him for any stated period or term; and, if it should elect him for a stated period of five years, we see no reason why it could not provide, then or subsequently, that it will pay him so much per day, week, month, or year, or graduate the amount according to the services performed, or increase the compensation, each year; provided, however, that the amount fixed does not exceed the rate of $5,000 per annum. If the board could have so provided when it first employed or elected appellee, we see no reason why it could not subsequently so provide, except so far as certain contractual relations or elements of contract may have entered into the employment; and these parties to the contract could change, of course, unless the statute or the Constitution prevents, and, as we have said, we know of no such provision, unless it be

section 281 of the Constitution, which we have already held does not apply to the case.

If the statutes in question had fixed a term of office, the question presented would be more difficult. Then, of course, the board could not change the term; but, as the statutes fix no term, the time of employment is necessarily left to the will of the board; and, as the statute does not even require the board to fix any certain term, it may fix any it pleases, and change it at will unless some element of contractual obligation prevent, and as to this only this appointee could complain. If the element of contract enters into the appointment, then this would tend to show that the position would not be a *public office,* within the meaning of section 281 of the Constitution.

As Mr. Mechem says:

"It is now well settled that there is no contract, either express or implied, between a public officer and the government whose agent he is." "Except in North Carolina, it is now well settled that there is no contract, either express or implied, between a public officer and the government whose agent he is. 'The latter,' says a learned judge, 'enters into no agreement that he shall receive any particular compensation for the time he shall hold office; nor, in the case of a statutory office, that the office itself shall continue any definite period.' Where the Constitution limits the compensation, it is beyond legislative control; but that makes no contract. The people have the control in their sovereign capacity, as the Legislature has in statutory offices. * * * On the part of the officer, there is still less in the nature of a contract. Whether he holds under a constitution or a statute, he is under no obligation to discharge his duties a single day. He may resign at any time and no power of the government can prevent him. The Legis-

lature may attach penalties to a refusal to serve in a public station, but that does not affect the question." —Mechem on Public Officers, § 463.

The tenure of appellee not being fixed by law, and there being no provision of law for his removal, he may be removed at the will of the board, or he could resign at any time, and in either case there would be no unexpired term. This is certainly true, unless some element of contract would prevent. Mr. Mechem thus states the law on this subject (Pub. Officers, § 445) :

"Where, therefore, the tenure of the office is not fixed by law and no other provision is made for removals, either by the Constitution or by statute, it is said to be 'a sound and necessary rule to consider the power of removal as incident to the power of appointment.' "

The Supreme Court of the United States has thus stated the law:

"All offices, the tenure of which is not fixed by the Constitution, or limited by law, must be held either during good behavior, or (which is the same thing in contemplation of law) during the life of the incumbent, or must be held at the will and discretion of some department of the government, and subject to removal at pleasure. It cannot for a moment be admitted that it was the intention of the Constitution that those offices which are denominated inferior offices should be held during life. And, if removable at pleasure, by whom is such removal to be made? In the absence of all constitutional provision or statutory regulation, it would seem to be a sound and necessary rule to consider the power of removal as incident to the power of appointment."—*Ex parte Hennen,* 13 Pet. 230, 259, 10 L. Ed. 138.

These same rules were recently announced by this court in the case of *Touart v. State ex rel. Callahan,* 173 Ala. 453, 56 South. 211, and the authorities collected and reviewed.

This proposition being true, the board could have re-, moved appellee and reappointed him, at pleasure, at each reappointment making his salary different, provided the amount did not exceed in rate the salary limit of $5,000 per annum, fixed by the statute. This, we think, clearly shows that appellee was not an officer, and was not holding a term of office within the meaning of section 281 of the Constitution.

The following authorities we think support us in our conclusion that appellee is not an officer, and holds no term of office within the meaning of section 281:

"A public officer is the person whose duty it is to perform the agency for the state of a public office. The essence of it is the duty of performing an agency; that is, of doing some act or acts or series of acts for the state. *State v. Stanley,* 66 N. C. 59, 8 Am. Rep. 488. Similar definitions might be almost indefinitely multiplied. But, after all, it is rather a narrow view to lay down a general definition of the term 'public officer,' and then to measure by it the meaning of that same term, no matter under what conditions it may be used. The nature of the duties, the particular method in which they are to be performed, the end to be attained, the depository of the power conferred, and the whole surroundings must be all considered when the question as to whether a position is a public office or not is to be solved.— *Board of Worcester County School Com'rs v. Goldsborough,* 90 Md. 193, 44 Atl. 1055, 1057." 6 Words and Phrases, 4934.

"If a statute excluded from 'office' one convicted of a particular offense, and used no other term or designation, the profession of a lawyer would not be included within the meaning of the term as generally used, because he can no more be said to hold an 'office' than one who follows the profession of a physician, the avoca-

[The State v. Sanders.]

.tion of a teacher, or who discharges the function of an administrator.—*In re Dorsey,* 7 Port. 293, 366." 6 Words and Phrases, 4938.

"A chief engineer of a city fire department, appointed by the council and subject to removal by it, is not an 'officer' within Const, art. 14, § 8, prohibiting an increase in the salary of any officer during his term of office.—*State ex rel. Kane v. Johnson,* 123 Mo. 43, 27 S. W, 399, 401." 6 Words and Phrases, 4943.

" 'Public offices' are in general, if not always, directly created by the Legislature itself; the municipal authorities selecting the persons to perform their functions. The term cannot be applied to the general superintendent of waterworks, employed by the water commissioners of a city for a term of years, the position being the creature of the board of commissioners, and entirely unknown to the statute.—*Cramer v. Water Com'rs of New Brunswick,* 57 N. J. Law (28 Vroom) 478, 31 Atl. 384, 385.". 6 Words and Phrases, 4943.

"Pharmacy commissioners appointed under Laws 18th Gen. Assem. c. 75, which authorized them 'to make by-laws necessary for the proper fulfillment of their duties without expense to the state,' elected a treasurer as provided by by-laws they had adopted, and fixed the tenure of his office, and his compensation. Held, that he was a mere employee of the commission, and not a 'public officer,' within Code 1873, § 3908, providing that a public officer converting money given to him by virtue of his office is guilty of embezzlement, since the Constitution and statutes neither created nor authorized the creation of his office, nor prescribed nor authorized any one to prescribe his duties, nor delegated to him sovereign functions of government to be exercised by him for the benefit of the public.—*State v. Spaulding,* 102 Iowa, 639, 72 N. W. 288, 289." 6 Words and Phrases, 4947.

"The word 'officer,' within the meaning of Acts 1882, c. 410, § 59, prohibiting any member of the common council, head of department, chief of bureau, or other officer of the city of New York from becoming directly or indirectly interested in the performance of any work or business the expense or price or consideration of which is payable from the city treasury, does not include the medical superintendent of the asylum for the insane at Ward's Island, who receives, as such superintendent, his salary payable out of the appropriations for the salaries of the officers and employees of the department of charities and corrections, and therefore such superintendent may properly be employed for a consideration by the district attorney of New York to examine the sanity of one on trial for crime.—*Macdonald v. City of New York*, 32 Hun. (N. Y.) 89." 6 Words and phrases, 4947.

"An examining surgeon appointed by the Commissioner of Pensions is not an 'officer' of the United States. —*United States v. Van Leuven* (D. C.) 62 Fed. 62, 65; *United States v. Germaine*, 99 U. S. 508, 510, 25 L. Ed. 482." 6 Words and Phrases, 4948.

"An internal revenue supervisor's clerk, appointed pursuant to the authority of the internal revenue commissioner, under Rev. St. § 3160, giving such commissioner power to allow supervisors their necessary expenses, was held not a 'government officer,' within Rev. St. § 1756, requiring all such officers to take the oath prescribed thereby.—*Hedrick v. United States*, 16 Ct. Cl. 88, 100." 6 Words and Phrases, 4948.

It appears to us that it would be impracticable, if not impossible, to apply section 281 of the Constitution to the case in hand. If appellee could be said to be an "officer" within the meaning of the Constitution, it is certain the law fixes no term of office during which his

[The State v. Sanders.]

compensation shall not be changed. The board, as we have before shown, could employ by the day, by the week, month, or year, and change this at will, as well as the amount of compensation, provided it does not exceed the rate of $5,000 per annum. For this reason it is wholly impracticable to apply the provision. Suppose the board employs appellee for five years, at $3,000 per annum, and he serves one year and desires to quit because his salary is insufficient, and the board agrees to pay him $4,000 for the next year. Is this not, in law and effect, a new employment—an abrogation of the old employment and a substitution of the new? Would the effect be any different, if he should resign, and thereafter be elected again and paid an increase of salary? Certainly not. We feel sure that section 281 of the Constitution is not involved in this case, and that it has not therefore been violated by any action of the state board of health, or of the appellee, and that the state was not entitled to recover of him in this case, as for excess of salary paid him over and above the amount first agreed on.

The trial court properly sustained the demurrer to the complaint of the state.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and GARDNER, JJ.. concur.