12 So.2d 326
**STATE ex rel. HYLAND v. BAUMHAUER**
et al.
**STATE ex rel. MANTELL v. SAME.**
1 Div. 416, 417.

Supreme Court of Alabama.

Oct. 20, 1942.

Harry Seale, of Mobile, for respondents.

FOSTER, Justice.

1. In answer to your first inquiry, we agree with you that the Act passed over the Governor's veto May 26, 1931, to which you refer in that inquiry is a local act under section 110, Constitution, since it is a designation of Mobile in substance as the only city to which it may ever apply,

and is therefore subject to section 106, Constitution, if it is not included in section 104(18). Whether it violates section 104(18) is not now considered. Mobile County v. State ex rel. Cammack, 240 Ala. 37, 197 So. 6.

The provisions of this Act to the extent that they appear in the Code of 1940, Title 62, section 461, are made effectual by the adoption of the Code as of May 31, 1941. Dillon v. Hamilton, 230 Ala. 310, 160 So. 708; Brandon v. State, 233 Ala. 1, 173 So. 238.

2. Your second inquiry is divided into subsections, and each will be treated as there set forth. It relates to Act No. 441, General Acts (Regular Session) 1931, page 538 (see, Code of 1940, Title 62, section 460), which became a law under section 125, Constitution, on July 22, 1931, and provides that the city controlled by it "shall appoint the necessary number of firemen who have had as much as one year's experience as firemen at a salary of $1440.00 per annum. * * * [They] shall hold office at the will of such city governing body," and shall be paid out of the general fund of the city.

An answer to the several features of your second inquiry involves a discussion of principles of law which we will undertake before answering each separately.

When there is no question but that the position held by one was a public office and no contention that it was merely a public employment, we have held that having performed the official service, he is entitled to the compensation provided by law though he had agreed to take less, and though he accepted less in full satisfaction of his claim. Downs v. City of Birmingham, 240 Ala. 177, 198 So. 231(28); Jeffers v. Wharton, 240 Ala. 21, 197 So. 358; Hamilton v. Edmundson, 235 Ala. 97, 177 So. 743. See Robertson v. Robinson, 65 Ala. 610, 39 Am.Rep. 17; Crutcher v. Johnson County, Tex.Civ.App., 79 S.W.2d 932; Altenberg v. City of Superior, 228 Wis. 372, 280 N.W. 342, 118 A.L.R. 1458.

.The fact that the tenure of office is not fixed by law, but is subject to the will of the judge who appoints him does not seem to be controlling in respect to this question, as demonstrated in Jeffers v. Wharton, supra. The officer there in question was the clerk of an inferior court of Ensley, appointed by the judge and holding office at his will.

The reason for the rule in Robertson v. Robinson, supra, is said to be that it "concerns a place of public trust, in which the public have high interests, involving the performance of public duties." And in Montgomery v. State, 107 Ala. 372, 381, 18 So. 157, 159, it is said that an " 'office' implies a delegation of a portion of the sovereign power, and the possession of it by the person filling the office * * *. [Such power is] a portion belonging sometimes to one of the three great departments, and sometimes to another. Still, it is a legal power, which may be rightfully exercised, and, in its effects, will bind the rights of others, and be subject to revision and correction only according to the standing laws of the state. An employment, merely, has none of these distinguishing features." See, Lacy v. State, 13 Ala.App. 212, 226, 227, 68 So. 706.

And in Harrington v. State, 200 Ala. 480, 76 So. 422, 423, it is pointed out that "when we speak of a public officer as a state, county, or municipal officer, we usually mean a person who, by lawful authority, has been invested with a part of the sovereign functions of government." And that sometimes a person so invested has become an officer of a board or institution rather than of the State, so as to be unaffected by section 281, Constitution, citing State v. Sanders, 187 Ala. 79, 65 So. 378, L.R.A.1915A., .295. See, also, Hard v. State ex rel. Baker, 228 Ala. 517, 154 So. 77.

We have often been concerned with the elements of a public office in respect to decreasing or increasing his salary under section 281, Constitution. See, Funderburk v. Oliver, 224 Ala. 301, 140 So. 370; Yielding v. McCombs, 238 Ala. 635, 193 So. 169.

And the application of the impeachment features of the Constitution (section 175). See, Cooper v. State, 226 Ala. 288(7), 147 So. 432; Touart v. State, 173 Ala. 453, 56 So. 211; Bradford v. State, 226 Ala. 342, 147 So. 182; Williams v. State, 197 Ala. 40, 72 So. 330, Ann.Cas.1918D, 869.

It has also been held that a fireman is not an "officer" under sections 97 and 98, Constitution, prohibiting payment of an officer's salary after his death and retirement of an officer on pay, since he is not vested with a part of the sovereignty of the State. Cobbs v. Home Ins. Co., 18 Ala.App. 206, 91 So. 627, certiorari denied 207 Ala. 712, 91 So. 922.

8

The question has also received consideration under other aspects of the law. See Scruggs v. State, 111 Ala. 60, 20 So. 642.

Our problem is not strictly one of whether the person in question is an officer as defined by some of the cases for certain purposes, but whether a fireman of a city fills a place of public trust, involving a performance of public duties which are a part of the sovereignty of the State or city. It is such a person who is prohibited by our public policy to trade and traffic in and about the compensation fixed by law.

■ A fire department, when organized and functioning, is performing a governmental rather than a proprietary function. Long v. City of Birmingham, 161 Ala. 427, 49 So. 881, 18 Ann.Cas. 507. But there is no legislative duty on the part of a city to maintain one. It is a right permitted by law. Code of 1940, Title 37, section 450.

There is no law which creates an office or an employment nor prescribes any duties of a fireman nor of a city in respect to a fire department. The Act here applicable to Mobile does neither. It leaves the whole matter of fire protection to the city, including the number of firemen and their term of service. Under Code of 1940, Title 37, section 407, a city may provide for a chief of the fire department. We are not here dealing with a chief thus authorized nor the nature of his duties.

■ The duties of a fireman are of an important public sort, but there is vested in such service no element of trusteeship possessing an ingredient of sovereignty. He handles no public funds, and discharges no duty which sovereignty is bound by law to discharge. He is not a public officer as ordinarily defined. 42 Amer.Jur. 882. § 4.

■ We are called upon to declare a principle of public policy which would prohibit the city and firemen from agreeing in time of financial stress to a reduction in salary for the future from that fixed by the Act rather than to have a reduction in the number of firemen. It was in the power and discretion of the city to reduce the number. The city may have been unable to pay to the existing number the salary prescribed. The statute in question could not force the city to exceed the debt limit of the Constitution. Section 225. The budget had to be balanced or the city may have been faced with expenses in excess of its current income which would create a debt in violation of sections 225 and 226.

So that if the firemen agreed to a reduction in salary for future services so as to balance the budget, rather than to face a reduction in their number, they were exercising a right which we do not think violated any public policy, and was based on sufficient consideration. And if without having previously made such express agreement, they accepted less compensation than that prescribed by the Act in full settlement of their salary, and on the basis of that fact the city acted in making its budget and financial set-up, or in creating, or in paying other expenses, all of which, including the amounts in question, would exceed current revenue, the principle of estoppel would have application. They could not be estopped, of course, unless they could agree. And a mere waiver of the balance due after performance of the service without consideration or the elements of estoppel, would be ineffectual. Hamilton v. Edmundson, supra. But an agreement for future services on a reduced scale of compensation when faced with an economic depression which the city decided necessitated a reduction in the expense of the fire department would not be without consideration.

This question has been discussed in many cases. Some of them agree with our views and some take the position that it is against public policy for any public employee under any circumstances to be bound by an agreement for the reduction of his salary fixed by law.

The case of Altenberg v. Superior, 228 Wis. 272, 280 N.W. 342, 118 A.L.R. 1452, discusses the question in a way consistent with what we have here said: The notes beginning on page 1458 of 118 A.L.R. give the majority view apparently as placing all public employees on the same footing as public officers, regardless of the nature of the service. But there are many cases which agree with us as shown by those notes.

■ If we are correct in the foregoing discussion, it follows that to inquiry 2-a we answer No.

■ To 2-b we answer Yes, if on a valuable consideration.

■ To 2-c we answer Yes, if the usual incidents of an estoppel exist.

■ To 2-d we answer No.

■ To 2-e we answer Yes.

To 2-f we answer No. See, State ex rel. City of Mobile v. Board of Revenue & Road Com'rs, 180 Ala. 514, at page 519, 61 So. 814, and cases cited. This is the same requirement as applies to counties under Title 12, section 118, Code of 1940, except in respects not here material.

To 2-g we answer: We do not seem to have a statute directly in point. But we think the liability of the city if it exists is in the nature of a simple promise to pay implied by law (since it is so required). It is therefore controlled by the six year statute,—see, Mutual B. & L. Ass'n v. Watson, 226 Ala. 526, 147 So. 817, —and that applies to each monthly claim separately.

To 2-h: We made the following observation with reference to the counties which had incurred debts in amount equal to the limit fixed by the Constitution, "that the obligations absolutely fixed by law are preferred claims; and that all voluntary obligations assumed or incurred after the exhaustion of the full amount of revenues on hand or in valid expectancy are debts which are repugnant to the Constitution, and are therefore invalid as to their payment." Brown v. Gay-Padgett Hardware Co., 188 Ala. 423, 66 So. 161, 163.

The same principle we think has application to a city which is indebted up to its constitutional limit.

We stated in Abrasley v. Jefferson County, 241 Ala. 660, 4 So.2d 153 (11), in substance, that an obligation imposed by law, and therefore involuntary, is a debt within the meaning of the Constitution, and cannot be so imposed in violation of its limitations. But we have not said that if such an obligation is imposed by law and made a current expense, having priority, and that current funds are improperly used in paying obligations voluntarily assumed, which are of a secondary sort, with none remaining to pay such preferred claims, that the preferred claims may not be voluntarily paid out of current operations of a succeeding year having sufficient funds for that purpose, not otherwise appropriated.

We do not understand that your inquiry 2-h relates to that situation, and that it is necessary therefore at this time to declare what would be the status of such unpaid preferred claim, for the reason, as we understand your inquiry, it relates to the salaries of the city firemen, and while those salaries may be fixed by statute, the number of firemen to be thus compensated is not thus fixed by statute, but is left to the discretion of the city.

We think, therefore, that when the city fixed the number of firemen necessary in its discretion, the obligation to pay an amount equivalent to their combined salary fixed by law is a voluntary obligation within the contemplation of the principle above mentioned, and not one made preferred because it is absolutely fixed by law. It therefore falls in the status of a voluntary obligation within the quotation we made above from Brown v. Gay-Padgett Hardware Co., and a deficit which is carried over into the next year becomes a debt within the contemplation of the constitutional limitation, and if thereby the total indebtedness of the city is exceeded, it is invalid.

With this explanation to the inquiry, we answer Yes.

To 2-i we answer that although section XI of the Local Civil Service Act of Mobile County does not authorize a rate of compensation inconsistent with such rate as may be otherwise in specific instances fixed by law (Local Acts of 1939 [September 15, 1939] page 298, section XI), the Court of Appeals held in Stone v. State ex rel. O'Connor, 8 So.2d 210,[1] that for reasons there stated, the Civil Service Act, supra, took precedence over a former local act fixing the annual salary of the assistant clerk of the Civil Division of the Circuit Court at $2,400, and that the Personnel Board had the power under its broad terms to provide for an increase in the compensation of such assistant clerk. See, also, Stone v. State ex rel. Goetz, Ala.App., 8 So.2d 208.[2] This holding is consistent with Bates v. State ex rel. Conniff, 240 Ala. 609, 200 So. 779, and has direct application here. We see no reason to give a different interpretation to the Civil Service Act.

To this inquiry, therefore, we answer that for the purpose of fixing the compensation of firemen, the Act of 1931, supra, should not be considered as controlling over the Civil Service Act, supra.

All Justices concur.

---

[1] 30 Ala.App. 500.

[2] 30 Ala.App. 489.