Eck, Appellant, vs. City of Kenosha, Respondent.

*November 11, 1937—February 15, 1938.*

*L. E. Vaudreuil* of Kenosha, for the appellant.

*Robert V. Baker, Jr.,* city attorney, and *Chester D. Richardson,* assistant city attorney, for the respondent.

The following opinion was filed December 7, 1937:

Fritz, J. On this appeal the facts are undisputed, and the issues involved are only questions of law. Since 1924 the

plaintiff has been an officer of the police department of the city of Kenosha. Under an ordinance adopted in January, 1931, he was entitled to a salary of $2,097 per year, payable semimonthly, which could not be legally reduced by the city council except on the recommendation of the police and fire commission. No such action was taken by either of those boards. But in the fall of 1931 (and continuing through the year 1935) it was necessary for the city, because of the business depression and its impaired financial condition, to reduce its expenses. Therefore, in October, 1931, the city manager advised its employees, including the members of the police department, that there would have to be a reduction either in salaries or in personnel. The members of that department proposed to the city council that, instead of having it reduce the salaries or the personnel for the year 1932, all members would sign agreements for the contribution of part of their salary to the city, in order to protect their existing salary schedules and their pension rights, under which they were entitled to a percentage based on those schedules. Accordingly, in January and May of 1932, and in January of 1933, 1934, and 1935, all of the police officers, including the plaintiff, executed separate agreements in which each agreed, in consideration of the mutual agreements of all other members, to contribute a portion of his salary to the city's poor-relief fund, under the January, 1932, agreement, and to the city's police-department maintenance fund, under the subsequent agreements; and each member designated, authorized, and directed the city's director of finance, as his agent, to deduct semimonthly from his salary the portions contributed, and ratified all acts of such agent in all respects. The city was not required to sign those agreements as a party thereto, or to enact, and it did not enact, any ordinance reducing those salaries, or otherwise authorize its employees or officers to deduct any part thereof. But commencing on January 15,

1932, the director of finance, in making up each semimonthly departmental pay roll, entered therein the full amount that represented the semimonthly salary of each member, and in adjacent columns entered the amounts allocated out of each member's salary to the pension fund, group insurance, the community chest, and his agreed contribution to the city, respectively; and each member, including the plaintiff, voluntarily approved such allocation by signing opposite the entries relating to him. In December, 1931, the city had appropriated $163,000 for the 1932 police-department pay roll, and during that year a check was issued semimonthly to each member for the balance of his salary, after deducting the items allocated as stated above; and a check for the total amount allocated for the members' voluntary contributions to the city's poor-relief fund was drawn against the fund appropriated for their pay roll, and thus that amount was transferred to the city's general fund. After 1932 the appropriation in the city's budget for the police-department pay roll was for the amount of the annual salaries, less the percentage thereof which the members had agreed to contribute, as stated above, to the city for its police-department maintenance fund. However, as the court found, the procedure followed by the director of finance in deducting, as the plaintiff's agent, the agreed percentage from his salary on each payday, pursuant to his agreements, was but a mechanical operation by which there was achieved, so far as the right of the plaintiff to payment directly to him was concerned, the same intended result as though he had been paid his full salary, and had then returned to the city in currency the portion thereof which he had agreed to contribute; and in the method thus adopted by his agent the plaintiff acquiesced and never made any demand for payment of the amounts thus voluntarily contributed by him until he filed a claim therefor on August 3, 1936. He has never claimed that the agree-

ments or his contributions thereunder were obtained by duress or coercion.

Instead, he contends that because the full amount of his salary was never actually paid to him so as to come into his possession, the amounts contributed, which he seeks to recover herein, cannot be considered voluntary contributions, but must be deemed deductions from his salary, which were unlawful because contrary to public policy. He relies upon *Schuh v. Waukesha,* 220 Wis. 600, 605, 265 N. W. 699, in which the city, pursuant to a resolution adopted by its council, during six months in 1933, deducted forty per cent of the city engineer's salary as fixed by an ordinance for that year; and then, after he had refused to accept the sixty per cent balance in each of those months, the city finally required him to enter into a compromise agreement, under which it withheld twenty per cent of his official salary, and paid only the balance thereof during the rest of his term. In respect to those facts we said, "It is clear here that the city, pursuant to resolution, retained a full forty per cent; that in order to get his salary the plaintiff was obliged to make a compromise by which the city retained only twenty per cent." And upon those facts we concluded that, "The circumstances of this case are such that by no stretch of the imagination can the plaintiff be said to have made a voluntary contribution to the city. The plaintiff is entitled to recover the amount withheld from him under such circumstances." However, those conclusions are not applicable in the case at bar, because it is undisputed that the plaintiff and all of the other police officers voluntarily agreed to make the contributions in question; that they did so to have the existing salary schedules continue in order to protect, for their benefit, their pension rights, so far as they were based on those schedules; and that their contributions enabled the city to avoid reducing those schedules and their pension rights, although the accounting

operations adopted to accomplish those purposes and results varied somewhat from the method contemplated under the agreements.

However, as we said in *Schuh v. Waukesha, supra,* "The case should not be made to turn upon the mere mechanics of the operation." As a matter of accounting, it would probably have been more in accord with the method contemplated under the agreements to enter the full amount of the departmental salaries on the expenditure side of the city's annual budget, and then enter the estimated total of the contributions on the revenue side, instead of accomplishing the same ultimate result by only entering on the expenditure side of the budget the net amount of the salaries after the deduction of the estimated contributions. However, under the accounting procedure followed by the director of finance, who was also acting as the agent of the police officers, the desired end result of avoiding any reduction in the authorized salary schedules was fully achieved. That achievement and the resulting protection and preservation of the departmental pension rights, rather than the mere mechanics of the operations or accounting methods adopted to accomplish those results, were the material and controlling matters. It follows that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on February 15, 1938.