COUGHLIN and others, Respondents, vs. CITY OF MILWAUKEE, Appellant.

*February 17—April 12, 1938.*

For the appellant there were briefs by *Walter J. Mattison,* city attorney, *Chas. W. Babcock,* first assistant city attorney, and *Ronold A. Drechsler,* assistant city attorney, and oral argument by *Mr. Drechsler* and *Mr. Babcock.*

For the respondents there was a brief by *Hill, Beckwith & Harrington* of Madison, and *Evrard & Evrard* of Green Bay, and oral argument by *Raymond E. Evrard.*

MARTIN, J.    In its opinion, the trial court says that the conclusion it reached is supported by the following authorities: *McCarthy v. Steinkellner,* 223 Wis. 605, 618, 270 N. W. 551, 271 N. W. 374; *Van Gilder v. Madison,* 222 Wis. 58, 89, 267 N. W. 25, 268 N. W. 108; *Schuh v. Waukesha,* 220 Wis. 600, 603, 604, 265 N. W. 699; *Rettinghouse v. Ashland,* 106 Wis. 595, 597, 82 N. W. 555; *Nelson v. Superior,* 109 Wis. 618, 623, 85 N. W. 412; *Silgen v.*

*Fond du Lac,* 225 Wis. 335, 274 N. W. 256. The court also cites many foreign cases found in the Annotation commencing on page 973, 70 A. L. R.

In *McCarthy v. Steinkellner, supra,* the plaintiff, an assistant fire chief of the city of Milwaukee, alleged that his retirement on pension had been forced by Steinkellner, chief engineer of the fire department. The plaintiff alleged that his application for retirement on pension was made because of a demand of the chief that he have his application for retirement on file by June 1, 1936, and because of the threat of the chief that if he did not the chief would demote him from his position of assistant chief to that of captain; that on retirement as assistant chief his pension would be one half his salary of $270 per month, while if he was demoted to the rank of captain his pension on retirement would be based upon the captain's salary of $210 per month; that plaintiff desired to remain in his position of assistant chief; that on the chief making said threat, he requested the chief to discharge him and file charges so that he might have a hearing before the board, but the request was refused; that at the time he filed the application for retirement on pension pursuant to the chief's demand, he knew that the chief had theretofore exercised the power of demotion, and he believed that the chief had such power and believed that the chief would carry out his threat if he did not retire, and so believing was coerced against his will into filing said application. Upon being informed soon thereafter by counsel that the chief did not possess any power of demotion, plaintiff, on June 4th, made an application to the chief and to the board for permission to withdraw his application, and asked to be reinstated to his position of assistant chief. The action was for a mandatory injunction directing Steinkellner, as chief engineer of the fire department, and the board of fire and police commissioners to permit him to withdraw his

application theretofore made for retirement on pension and to reinstate him to the position of assistant fire chief. This court said, page 618:

"We consider that these allegations bring the complaint within the rule respecting duress of municipal officers protected by tenure of office provisions recently enunciated in the cases of *Schuh v. Waukesha*, 220 Wis. 600, 265 N. W. 699; *Van Gilder v. Madison*, 222 Wis. 58, 267 N. W. 25, 268 N. W. 108, wherein the court relieved members of the police departments of the defendant cities from their agreements to waive portions of their salaries under threat of discharge if they did not do so."

In *Van Gilder v. Madison, supra,* the facts are clearly distinguishable.

In *Schuh v. Waukesha, supra,* the plaintiff, city engineer, brought action to recover his unpaid salary. The plaintiff was appointed city engineer on May 1, 1926, and acted as such until April 30, 1934. By ordinance adopted on February 16, 1932, the city engineer was to receive the sum of $3,900 per annum; the plaintiff was paid the full salary of $325 for the month of May, 1932; received the same salary for the period from June, 1932, to February, 1933, inclusive, during which period, upon request of the city, pursuant to resolution adopted by the common council, the plaintiff issued his check to the city for the sum of $32.50 for each of said months, that being ten per cent of his salary; on February 21, 1933, the common council, by resolution, assessed a contribution of forty per cent upon plaintiff's salary, which was to be deducted from his salary by the city clerk; plaintiff refused to consent to the forty per cent reduction; his salary was withheld until September, 1933, when a compromise was entered into, as a result of which twenty per cent of the salary was withheld; the plaintiff received from March, 1933, to and including April, 1934, salary at the rate of $260 per month; after his term of office had expired, plain-

tiff filed a claim against the city amounting to the difference between the legal salary and the amount which he actually received. The trial court gave plaintiff judgment for the difference between what he had received and his fixed salary of $3,900 per annum, for the full period. It appears that on the 19th day of April, 1932, the city council adopted a resolution—

"That the elective officers of the city of Waukesha accept a reduction of salary of ten per cent beginning May 1, 1932, for the ensuing year."

It was pursuant to this resolution that plaintiff refunded ten per cent of his salary from May, 1932, to February, 1933, both inclusive. Upon appeal, this court modified the judgment, permitting the city to retain the ten per cent contributions. In that connection, the court said, at page 604:

"There appears to us, however, to be a clear distinction in this case between the ten per cent received by the plaintiff and returned by him to the city upon request of the city and the amounts retained by the city pursuant to the compromise entered into as set forth in the statement of facts. When plaintiff received the full amount of his salary, and at the request of the city returned ten per cent of it to the city to be used for relief purposes, it clearly amounted to a voluntary contribution to the public treasury. The city did not make the payment conditional upon the return of ten per cent, but the plaintiff in response to a demand which was state-wide and acceded to generally by public officials, made a contribution in the interest of the public welfare; therefore he has no claim upon the city for the amount so returned. The amount withheld after the adoption of the resolution levying a forty per cent contribution on the plaintiff's salary stands on an entirely different footing. While the case should not be made to turn upon the mere mechanics of the operation it is clear here that the city, pursuant to resolution, retained a full forty per cent; that in order to get his salary, the plaintiff was obliged to make a compromise by which the city retained only twenty per cent. Under these facts we are unable to distinguish this case from *Nelson v. Superior, supra.*

The circumstances of this case are such that by no stretch of the imagination can the plaintiff be said to have made a voluntary contribution to the city."

In *Rettinghouse v. Ashland, supra,* and *Nelson v. Superior, supra,* the fixed salary was changed. In the case at bar, the fixed salary of the firemen was not changed. The resolution of the common council of July 11, 1932, quoted in the preceding statement of facts, simply provides:

"That all officials and salaried employees be and are hereby requested to voluntarily contribute ten per cent of their salaries to an unemployment fund to be administered by the common council unemployment committee for the purpose of employing labor and for such other purposes of unemployment relief as the common council from time to time may designate," etc.

No recommendation by the board of fire and police commissioners was necessary because the fixed salaries of the firemen were not reduced. There was no impairment of their pension rights.

In *Eck v. Kenosha,* 226 Wis. 647, 276 N. W. 309, plaintiff did not claim that his contributions, or the agreement under which they were made, were obtained by duress or coercion, but he contended that because the full amount of his salary was never actually paid to him so as to come into his possession, the amounts contributed, which he sought to recover, could not be considered voluntary contributions, but had to be deemed deductions from his salary, which he claimed were unlawful because contrary to public policy. He relied upon *Schuh v. Waukesha, supra.* This court said (p. 651):

"The case should not be made to turn upon the mere mechanics of the operation."

Further, the court said (p. 651):

"However, under the accounting procedure followed by the director of finance, who was also acting as the agent of

the police officers, the desired end result of avoiding any reduction *in the authorized salary schedules was fully achieved.* That achievement and the resulting protection and preservation of the departmental pension rights, rather than the mere mechanics of the operations or accounting methods adopted to accomplish those results, were the material and controlling matters."

So, in the instant case. The waivers signed by the firemen authorized the city comptroller and treasurer to deduct the specified per cent from each pay check as a contribution to the unemployment fund.

It is not against public policy, in times of great public distress or otherwise, for a municipal or state officer or employee to donate to his city, county, or state such part of his salary or emoluments of office as he sees fit to contribute for the relief of the municipality or state. While his salary may not be diminished, except under certain conditions, he can do what he will with his own, and if he chooses to devote part of it to the city or state, and the latter accepts the same, no public policy forbids it. *Schuh v. Waukesha, supra; Eck v. Kenosha, supra; Ryan v. City of New York,* 177 N. Y. 271, 69 N. E. 599.

It is alleged that the plaintiff signed the waivers because of duress, force, and compulsion. While a liberal construction must be applied upon demurrer, we cannot permit conclusions to serve in place of facts. Duress is a gross species of fraud. *Hodge v. Wallace,* 129 Wis. 84, 93, 108 N. W. 212. In *Supervisors of the Town of Franklin v. Kirby,* 25 Wis. 498, 501, the court said:

"The statute requires, it is true, that pleadings shall be liberally construed for the furtherance of justice. But this means only that they shall be fairly and liberally interpreted, so as to make them say what the pleader intended. It cannot mean, that, after they have been so construed, and it is found that all that is said is insufficient, without other facts,

then the court should liberally assume the other facts to be true, upon the ground that the pleader would not have said what he did unless he wished to be understood that the other facts also existed."

"Any amount of persuasion to influence one to exercise his own will to some particular end does not constitute duress." *Batavian Bank v. North*, 114 Wis. 637, 645, 90 N. W. 1016.

The leading case in this jurisdiction on the question of duress is *Galusha v. Sherman*, 105 Wis. 263, 81 N. W. 495. At page 277, the court said:

"Duress, in its broad sense, now includes all instances where a condition of mind of a person, caused by fear of personal injury or loss of limb, or injury to such person's property, wife, child, or husband, is produced by the wrongful conduct of another, rendering such person incompetent to contract with the exercise of his free will power. . . ."

At page 278:

"The means used to produce that condition, the age, sex, and mental characteristics of the alleged injured party, are all evidentiary, merely, of the ultimate fact in issue, *of whether such person was bereft of the free exercise of his will power*."

And at page 280:

". . . The true doctrine of duress, at the present day, both in this country and England, is that a contract obtained by so oppressing a person by threats regarding his personal safety or liberty, or that of his property, or of a member of his family, as to deprive him of the free exercise of his will and prevent the meeting of minds necessary to a valid contract, may be avoided on the ground of duress. . . ."

A mere averment of duress, without setting out the facts justifying such averment, is a conclusion of law. *Murphy v. Mitchell* (D. C.), 249 Fed. 499; *Heald v. Crump*, 73 Colo. 251, 215 Pac. 140; 49 C. J. pp. 61, 62, § 39, and cases cited under note 44; *Bunker Hill Country Club v. McElhat-*

*ton,* 282 Ill. App. 221; Pomeroy, Code Remedies (5th ed.), p. 918, § 564.

In *Bunker Hill Country Club v. McElhatton, supra,* the action was brought to set aside the purchase by the club of stock of its assistant manager, who was also a member of the board of directors that voted on the sale. It was held that the allegations of the complaint, that he (assistant manager) entered into a "campaign of terrorism designed and intended to wreck" the club; that he "called one or more meetings of certain members and endeavored to induce them to resign" from the club; that in order "by force, fear and intimidation" to compel the club to purchase his stock, he refused to perform his duties; that he threatened to and proceeded to use various devices and artifices to persuade "members of the club to resign and organize another golf club;" that he "threatened to take measures to disrupt and wreck the club;" and that "because of such acts and threats and intimidation and, because of and under fear and duress caused thereby," the board of directors entered into the agreement with him, were mere conclusions and were insufficient to allege duress avoiding the transaction.

It is alleged that it was represented to the plaintiff and other firemen "that provided the said waivers of ten per cent were not signed, drastic action would be taken." The pleader interprets this as, in effect, charging that it might mean a demotion in rank or even a dismissal from service. This allegation, and others to which reference has been made, must be read in connection with the further allegation, "that in consideration of the waivers being signed that the plaintiffs and other firemen would receive time off to equal the amount deducted from their pay." In respondents' brief is this statement:

"We contend that even though there was no duress in the case, the agreement of the plaintiffs to accept reductions in

salaries was a nullity because there was no consideration or rather a failure of consideration on the part of the defendant city. However, we do not ground our cause of action on the breach of contract. We contend that there was no breach of contract because there was no contract . . . there was no meeting of the minds."

Any theory on breach of contract is out of the case, first, because no breach of contract is alleged, secondly, because it is claimed that the waivers were obtained under duress; hence, the signed waivers and all contributions to the unemployment fund thereunder are void, (a) because contrary to public policy, (b) because obtained under duress. We have disposed of the public policy theory, and we must hold that there are no averments of fact to state a cause of action on the ground of duress. Therefore, the defendant's demurrer to the complaint on the ground that it did not state facts sufficient to constitute a cause of action should have been sustained.

*By the Court.*—The order overruling defendant's demurrer to the complaint is reversed, and cause remanded with directions to enter an order sustaining the demurrer.