ALTENBERG, Respondent, vs. CITY OF SUPERIOR, Appellant, and three other cases.

*May 17—June 21, 1938.*

For the appellant there were briefs by *Maynard Berglund,* city attorney, and *Claude F. Cooper,* assistant city attorney, and oral argument by *Mr. Berglund.*

For the respondents there was a brief by *Crawford & Crawford* of Superior, and oral argument by *R. A. Crawford.*

NELSON, J. In determining the questions presented on these appeals, the six policemen whose claims are here involved will be referred to as the "plaintiffs" without distinguishing between the living and the dead. During the times when the city deducted certain amounts from the plaintiffs' pay checks, and which the plaintiffs now seek to recover, they were either members of the police force of the city of Superior or were acting and performing services as such.

The city contends that certain of the plaintiffs, during the times mentioned, had not been duly appointed as policemen, as required by law and the rules of the police and fire commission of the city of Superior. Considerable evidence was adduced relating to that contention. We deem it unnecessary to discuss that evidence, for the reason that, in our view, it is quite immaterial whether they were *de jure* or *de facto* members of the police force. *State ex rel. Kleinsteuber v. Kotecki,* 155 Wis. 66, 144 N. W. 200.

During the times when the claims are asserted to have accrued, the plaintiffs were all on the pay roll, and, with the exception of Allen, were paid such salaries as were provided by the salary schedule applicable to policemen, less the amounts deducted pursuant to the action of the common council. The claim of the plaintiff, Altenberg, which was allowed by the court, is for salary reductions or salary withheld during the

period commencing June 1, 1932, and ending December 1, 1935, when he retired on a pension. The claim of Mangan, assigned to Altenberg, and which was allowed by the court, covers the period from June 1, 1932, to July 16, 1936. The claim of Clark, which was allowed by the court, covers the period from June 1, 1932, to December 1, 1935. The claim of Allen allowed by the court, covers the period from June 1, 1932, to April 1, 1936, as to deductions in salary, and a period from March 1, 1933, to November 1, 1933, as to his claim for $25 per month, asserted to be due him under the salary schedule. The claim of Parsons, which was allowed by the court, covers the period from June 1, 1932, to September 1, 1936.

Sec. 62.13 (7), Stats., provides, in part, as follows:

"The salaries of chiefs and subordinates shall be fixed by the council. . . . Such salaries when so fixed may be increased but not decreased by the council without a previous recommendation of the board. . . ."

It appears without dispute that during all of the times mentioned, the city of Superior was in a serious financial condition because of the nation-wide depression and the inability of so many of its taxpayers to pay their taxes. For some considerable time the city was compelled to pay the salaries and wages of its employees by issuing its own scrip. *Lurye v. State,* 221 Wis. 68, 265 N. W. 221. On June 8, 1932, the police and fire commission sent the following recommendations to the mayor and city council:

"A meeting of the police and fire commission was held Tuesday afternoon at which time representatives of the police department and fire department were present. The wage reduction was discussed fully and an amicable understanding reached. The following action was taken by the police and fire commission:

" 'Moved and seconded that the board of police and fire commissioners notify the city council that the members of the police and fire departments shall make a donation of

10% of their wages, in lieu of a 10% cut in scale, to the city for the period from June 1, 1932, to November 1, 1932, each member to sign a satisfactory contract similar to the form herewith attached.' Motion carried.

" 'Moved and seconded that the secretary be instructed to send a copy of this motion to the city council.' Motion carried."

Each of the plaintiffs thereafter executed a formal writing, wherein and whereby, he appointed George Ostrom, city treasurer or his successor, as his attorney to deduct the equivalent of ten per cent from all monthly pay checks due him up to the 1st of October, 1932, and further authorized him to pay the sums so deducted into a fund for the aid of the unemployed of the city and to execute and deliver complete receipts, releases, discharges, and satisfactions to the city. Similar writings were duly executed and delivered to the city treasurer in the month of November, 1932, which covered the pay checks to which the plaintiffs would be entitled on November 15, 1932, and up to November 1, 1933.

On July 1, 1933, the common council, after having given a full hearing to its city employees, including its policemen, firemen, and teachers, but without a recommendation of the police and fire commission, reduced the salaries of all city employees, twenty per cent. On December 14, 1933, by lump-sum checks, the city reimbursed the plaintiffs and other employees so that the salaries which had been reduced in July were in part restored. The city thereafter continued to deduct from the pay checks of its employees certain equal percentages thereof. On November 20, 1934, the policemen's union petitioned the council for a restoration of the wage schedule of the members of the police department to within five per cent of the basic wage earned by members of the department during the year 1931. The petition was referred to the budget committee. It is very apparent that the mayor, the members of the common council, and all of the city em-

ployees, including the plaintiffs, fully realized the serious financial condition of the city and the absolute necessity of curtailing city expenditures.

It is clear that the ten per cent reductions withheld by the city up to the month of July, 1933, were voluntary contributions by the plaintiffs to the unemployed relief fund, and no part of the amounts withheld under the waivers executed and delivered can be recovered. While there is evidence to the effect that some of the plaintiffs did not like to have their salaries reduced, there is no evidence that approximates a showing of coercion or duress. *Eck v. Kenosha*, 226 Wis. 647, 276 N. W. 309. Several of the plaintiffs who testified realized the necessity of retrenchment and appreciated that, in the situation which confronted the city, either their salaries or the personnel of their department would have to be reduced.

As to the salary reductions which were withheld subsequent to July 1, 1933, we are of the opinion that notwithstanding the provisions of sec. 62.13 (7), *supra,* it must be held that the plaintiffs waived and acquiesced in the salary reductions and are estopped under the facts of this case to claim the full amounts of their salaries. None of the plaintiffs made any protest to the city or notified the city that acceptance of his monthly checks would not operate as a waiver of the salary reductions withheld. In *Van Gilder v. Madison,* 222 Wis. 58, 267 N. W. 25, 268 N. W. 108, the policemen of the city of Madison promptly filed a written protest with the mayor and common council shortly after the council reduced their salaries and also notified the city that the acceptance of future salary checks would be without waiver of their rights and that such payments would be accepted under protest with all rights reserved to claim and recover the full amount of their salaries. See Vol. 2018, Cases and Briefs, *Van Gilder v. Madison,* Case p. 34.

So we have actions here in which it was undisputably shown that the city of Superior was in a most serious financial condition; that the plaintiffs fully realized the seriousness of the city's financial condition and the need for retrenchment; that the plaintiffs were faced with a situation which necessitated either a reduction in their salaries or a reduction in the personnel of their department; that subsequent to July, 1933, the plaintiffs accepted their monthly pay checks without protest, although the deductions, purportedly authorized by the council, were withheld; and that until the claims were filed in October, 1936, the city was not informed or advised that the plaintiffs were claiming or would claim the amounts deducted or withheld. The facts here are so similar to those dealt with in *Connor v. Chippewa Falls, ante*, p. 102, 279 N. W. 640, as to require that the rules stated there be applied here. It was there said:

"It is settled in this state that a common council cannot decrease a fixed salary of a policeman or fireman below an amount recommended by the board of police and fire commissioners, *Van Gilder v. Madison* (1936), 222 Wis. 58, 267 N. W. 25, 268 N. W. 108, but there are circumstances under which an employee must be deemed to have waived his right to insist upon the strict enforcement of this rule. An acceptance of the payment of a reduced salary over a long period of time, together with acts showing an intention on the part of the recipient to treat the deducted amount as a donation to the general welfare, amounts to acquiescence, and gives rise to an estoppel. . . .

"In the case before us there was a general assumption that the cut in salary was warranted by the necessities of the times, and that it was legally accomplished. No protest appears to have been made and after several years of monthly acceptance of the reduced pay the men here involved filed with the common council a request reading:

" 'We, the undersigned, members of the police and fire department of the city of Chippewa Falls, respectfully petition your honorable body to restore the salaries of the members of the police and fire department to that to which they

were prior to the reduction of ten dollars ($10) a month that was taken as an economy measure.'

"This request is not couched in language of protest, but indicates approval of what had transpired during the period of the reduced salary. It would be unjust to permit the men now to protest a situation which could have been so readily corrected at an earlier date by action of the board or by some other method of adjusting expenditures. There was no fraud or deceit practiced, causing the men to forego their right to the full salary, if they intended to insist upon it and not to waive it. This compels the conclusion that their waiver of this right, payday after payday for three years, was voluntary, and that they willingly assumed their portion of the burden which the depression laid upon their community."

The *Connor Case,* in our opinion, cannot be distinguished.

The trial court was of the view that the present cases were ruled by *Rettinghouse v. Ashland,* 106 Wis. 595, 82 N. W. 555; *Nelson v. Superior,* 109 Wis. 618, 85 N. W. 412; *Schuh v. Waukesha,* 220 Wis. 600, 265 N. W. 699; *Van Gilder v. Madison, supra;* and *Silgen v. Fond du Lac,* 225 Wis. 335, 274 N. W. 256. Those cases are distinguishable from the present. In the *Rettinghouse, Nelson,* and *Schuh Cases* the salaries of officers were involved, which salaries had been duly fixed by the common councils for their terms of office, pursuant to charter or statutory provisions, and which could not be reduced during the terms for which they were appointed or elected. The present cases involve policemen who have no definite tenure of office and who serve until they are retired or are removed for cause. *Silgen v. Fond du Lac, supra.* Their salaries may be reduced by the common council upon recommendation of the police and fire commission. Sec. 62.13 (7), Stats. The difference between that section and the section which prohibits a reduction in the salary of an officer during his term of office is apparent, especially in a case where the doctrine of estoppel is invoked. Had the plaintiffs and other policemen filed a protest with

the city, such as was filed in *Van Gilder v. Madison,* it is safe to say, that in the financial situation which confronted the city during the years mentioned, the police and fire commission and the council would have co-operated and promptly and lawfully reduced salaries. Such action, in the absence of voluntary acquiescence, was imperative. The failure of the plaintiffs to protest and the acceptance by them of checks without protest during all of those years impels the holding that the plaintiffs are now estopped to claim the full amounts of their salaries. This is not a case where one employee or officer has been singled out, but one in which the salary reductions applied equally to all city employees and were made necessary by a nation-wide depression with which we are all quite familiar. It is our conclusion that the plaintiffs may not, under the circumstances, justly recover the salary reductions withheld by the city.

As to Allen's claim for $25 per month from March 1 to November 1, 1933, we are of the opinion that the trial court was correct in holding that Allen's salary during that time was $170 per month instead of $145. Prior to March, 1933, the council amended the then existing ordinance, which provided for two full-time motorcycle officers and four part-time motorcycle officers when needed, to read: "Five motorcycle officers." The court specifically found:

"That during the year 1930 plaintiff, Thomas Allen, was duly appointed as a part-time motorcycle officer of the city of Superior, and from said date down to and including the 3d day of March, 1933, he performed the usual and regular duties of a part-time motorcycle officer of the city of Superior; that on the 3d day of March, 1933, plaintiff, Thomas Allen, was duly appointed and confirmed as a full-time motorcycle officer of the city of Superior and since said time down to and including the 1st day of April, 1936, said Thomas Allen performed the usual and regular duties of a full-time motorcycle officer of the city of Superior. That said Thomas

Allen was paid the regular salary of a part-time motorcycle officer in the sum of $145 per month until June 1, 1932. ...

"That the salary of a part-time motorcycle officer of the city of Superior was established by the common council of the city of Superior on May 29, 1929, by ordinance of the common council of the city of Superior No. 1020 establishing the rate of pay of part-time motorcycle officers at $145 per month, as formerly provided for by ordinance No. 1006, dated the 15th of June, 1926; that the said rate of pay was in full force and effect from said date down to and including the 1st day of April, 1936. That the salary of a full-time motorcycle officer of the city of Superior was established by the common council of the city of Superior on May 29, 1929, by ordinance of the common council of the city of Superior No. 1020 establishing the rate of pay of full-time motorcycle officers at $170 per month, as formerly provided for by ordinance No. 1006, dated the 15th day of June, 1926, and provided for two of such officers; that the number of full-time motorcycle officers as provided for by said ordinances was increased from two to five by ordinance of the common council of the city of Superior, passed and adopted on the 21st day of February, 1933, and plaintiff was one of said five motorcycle officers so provided for by said ordinance; that said ordinances so establishing the rate of pay of five full-time motorcycle officers were in full force and effect from said date to and including the 1st day of April, 1936."

We have carefully examined the evidence and are of the opinion that the finding that Allen was duly appointed and confirmed as a full-time motorcycle officer on March 3, 1933, is supported by the evidence and may not be disturbed. It appears that shortly after March 3, 1933, when he was appointed a full-time motorcycle officer, he went to the city attorney and protested that he was not getting the salary to which he was entitled as a full-time motorcycle officer. Commencing November 1, 1933, he was paid on a basis of $170 per month. Although he is entitled to such additional salary it must be subject to such deductions as were being currently withheld from all city employees.

*By the Court.*—The judgments in, (1) Frank Altenberg against the city of Superior, (2) Harry W. Clark against the city of Superior, (3) Fannie Parsons, administratrix of the estate of Daniel Parsons, deceased, against the city of Superior, are reversed, and the causes remanded with directions to dismiss the complaints.

The judgment in Thomas Allen against the city of Superior is reversed, except as to that part thereof which adjudged him to be entitled to $25 per month from March 1, 1933, to November 1, 1933, subject, however, to such deductions as were currently withheld by the city during that period. That cause is remanded with directions to the court to modify that judgment in accordance with the opinion and enter judgment in favor of Thomas Allen against the city of Superior for the proper amount when found.