MAXWELL, Plaintiff, vs. CITY OF MADISON, Defendant. [Two appeals.]

*May 8—June 4, 1940.*

*James J. McDonald,* attorney, and *John R. Mills* of counsel, both of Madison, for the plaintiff.

*Harold E. Hanson,* city attorney, and *Doris E. Lehner,* assistant city attorney, for the defendant.

FOWLER, J.   The plaintiff was city treasurer of Madison during three successive terms: From, (1) April, 1932, to April, 1934; (2) from April, 1934, to April, 1936; and (3) from April, 1936, to April, 1937.   The plaintiff claims and demands recovery of specific sums of salary still due and unpaid to him during each of these terms.   The city (4) claims overpayments during his second and third terms, and demands judgment for the amount of the overpayments.

(1) The facts involved under this head are that when the plaintiff began his first term his salary had been duly fixed at $3,000 per year.   Such was his salary on January 4, 1933, when the common council adopted an ordinance recommended by the board of estimates on submitting to the common council a budget for the ensuing year.   The proposed budget recited co-operation of the heads of all city departments, of one of which the plaintiff was the "head;" that the city was faced with the most serious situation ever presented to the board, viz., loss of revenue amounting to $600,000; that partially to overcome this a reduction in "salaries and wages" was made in the budget of $380,000.   The board considered that it was "absolutely essential that all department heads" keep within their budgets, and "adhere to the salary reduction schedule" as recommended by the board. This schedule included $2,400 as the salary of the city treasurer.

On adoption by the council of the ordinance proposed by the board of estimates, the plaintiff on January 13th, sent to the city clerk a letter saying:

"I hereby agree to accept the salary fixed by the common council in adopting the 1933 budget on condition that all other officers and employees are paid in accordance with the provisions of the budget and accept the amounts provided in the budget and the salary ordinance for 1933."

Following his letter of January 13th, the plaintiff executed a formal instrument reciting that he waived "for the balance of" his term "all right to payment of the full salary fixed for" his office "in consideration of the payment" to him "of the amounts specified for" his office in the 1933 budget adopted by the council. After this, the plaintiff, in certifying as city treasurer to the monthly pay roll of the city in performance of his official duty, inserted the amount of his salary according to the proposal of his letter of January 13th, and his "waiver" of January 18, 1933.

The plaintiff bases his claim of right on the case of *Schuh v. Waukesha*, 220 Wis. 600, 605, 265 N. W. 699, and the cases therein cited. This case and those cited therein were recently critically examined and analyzed in *Coughlin v. Milwaukee*, 227 Wis. 357, 368, 279 N. W. 62. We see no need to repeat that analysis. It is clearly stated in that opinion, as pointed out by Judge REIS in his decision, here appealed, that:

"It is not against public policy, in times of great public distress or otherwise, for a municipal or state officer or employee to donate to his city, county, or state such part of his salary or emoluments of office as he sees fit to contribute for the relief of the municipality or state. While his salary may not be diminished, . . . he can do what he will with his own, and if he chooses to devote part of it to the city or state, and the latter accepts the same, no public policy forbids it."

It seems manifest that a city officer, like any other person, may make a gift to the city, if he wants to, and that the gift may be made of a part of his salary as well as of anything else. The officer cannot be coerced to waive his salary by threats of removal or refusal to reappoint. But "the case should not be made to turn upon the mere mechanics of the operation." *Schuh Case, supra; Eck v. Kenosha,* 226 Wis. 647, 276 N. W. 309; *Coughlin v. Milwaukee, supra.* Nor can it be made to depend on the system of bookkeeping used in effecting the gift. Had the plaintiff drawn his salary at

.the rate of $250 per month, and by his personal check refunded $50 to the city, this would clearly have shown a voluntary contribution to the city of the amount of the waiver. No threats or coercion are involved in this case. We consider that the conceded facts clearly show an intent of the plaintiff voluntarily to contribute to the city because of the existing financial emergency $50 a month of his salary for the year 1933, and we conclude as matter of law that upon those facts such contribution was made. *Connor v. Chippewa Falls,* 228 Wis. 102, 279 N. W. 640; *Altenberg v. Superior,* 228 Wis. 272, 280 N. W. 342. The amount voluntarily contributed cannot be recovered.

(2) The claim for refund for salary withheld between April 17, 1934, and July, 1935, rests on a different basis. The common council in February, 1934, at which time the common council must fix the salaries for the ensuing term by sec. 62.09 (6) (b), Stats., if they are to be changed, enacted a salary ordinance. This ordinance declared that the "basic rate" of city officers and employees remained as under the prior ordinances, but it expressly "provided, however, that there shall be deducted from each payment . . . during the years 1934 and 1935, unless the common council shall determine that any such deductions shall not be necessary" the sum of $600 from the "basic rate" of the salary of the city treasurer, and that such amount so deducted should be retained by and become the property of the city. The ordinance also declared that the provision next above quoted was "an emergency measure made necessary" by the "financial situation affecting the revenues of the city," and that acceptance of the amount specified to be retained by the city by an officer should constitute an agreement by him that the deduction should be made unless the council should determine the deductions unnecessary and that the revenues of the city would be sufficient to pay the salaries in full.

We have recently had occasion to consider the purpose and underlying principle of sec. 62.09 (6) (b), Stats. The stat-

ute is thoroughly discussed in *Feavel v. Appleton,* 234 Wis. 583, 291 N. W. 830, and it is there declared that its principle and purpose is that the city officer shall know definitely before the ensuing election what that salary shall be. Under that declaration the salary was by the ordinance now under consideration either $3,000 or $2,400 and there can be no doubt that the ordinance fixed the amount actually to be paid at $2,400. That was the plaintiff's salary unless something should occur which would warrant the council in changing it. It was definitely fixed that that should be the amount to begin with, and that was the only thing that was definitely fixed. We consider that the ordinance fixed the salary at $2,400. The council June 29, 1935, passed an ordinance declaring that the salaries of city officers were "restored to the extent of 5% of the basic salary" provided by the February, 1934, ordinance. But as sec. 62.09 (6) (b), Stats., provides that salaries of officers shall not be increased or diminished during the ensuing term, the provision attempting to increase plaintiff's salary by $12.50 per month was void. It follows that the plaintiff's claim for $50 per month during 1934 and 1935 up to July, 1935, and to $37.50 per month thereafter was properly denied.

(3) At its regular February, 1936, meeting the council passed an ordinance purporting to fix the "basic rate" of the salary of city treasurer during the ensuing term at $3,000, but providing for a deduction from such salary, unless the council should determine such deduction not necessary, of $450, and containing declarations as to emergency and acceptance of the amount of the basic salary less deductions as set forth in the ordinance of February, 1934. This ordinance, according to what is said under (2) above, fixed the treasurer's salary at $2,550, and made the payments at that rate lawful and in full. There can thus be no recovery of any further sum for salary during the plaintiff's third term.

(4) The city's counterclaim is for the increased payment of $12.50 per month during the second term, and an overpay-

ment during his third term at the rate of $3,000 per year. What is said in (2) above makes the $12.50 per month increase above referred to in excess of his fixed salary of $2,400 per year unlawful.

During the plaintiff's third term he was paid $250 per month. His salary as above stated had been fixed at the February, 1936, meeting of the common council at $2,550 per year, or $212.50 per month. The payments at the rate of $3,000 per year were based upon the enactment of a referendum ordinance by the voters at the April, 1937, election. This ordinance provided that "the salaries of the *employees* in all departments be restored to the salary schedule set out in Ordinance No. 37, which ordinance was approved on the 22d day of December, 1931." That ordinance fixed the salaries of employees only, not the salaries of city officers. After enactment of this ordinance and as pursuant thereto the plaintiff in making out the city pay rolls certified the payments of salaries of employees at the amounts fixed by the ordinance next above cited and also certified the payments of the salaries of city officers at the rate at which they were paid in December, 1931.

It is to be noted that the referendum ordinance applied by its terms to "employees" of the city, and makes no reference to its officers. There is a wide distinction between the two. The common council can increase the pay of its employees at will, but it cannot increase the salary of its officers during their terms. Sec. 62.09 (6) (b), Stats. It is also to be noticed that the referendum ordinance restores the pay of its employees to that fixed by an ordinance passed in December, 1931. This ordinance could have no effect on the salaries of city officers because their salaries must be fixed at the first regular meeting in February preceding their election. Par. (b), *supra*. In *Feavel v. Appleton, supra,* the court held that the approval of a referendum ordinance at a city election does not affect the salaries of city officers elected at that elec-

tion. The salaries of those officers remain as theretofore fixed. The plaintiff was elected for his third term at the same election at which the referendum ordinance was passed. The salary of the plaintiff as city treasurer, as we have held, had been theretofore fixed at $2,550 per year. It follows that the payments of $250 per month were therefore unlawful to the extent of $37.50.

The excess payments of $12.50 per month during the second term and $37.50 per month during the third term being unlawful, can they be recovered? *A priori,* it would seem that they can. The trial court considered that "what is sauce for the goose is sauce for the gander," and that on that "mother goose" principle the city could not recover salary unlawfully paid to the treasurer if the plaintiff could not recover salary lawfully deducted. The reason is manifestly faulty for its placing lawful and unlawful transactions on the same footing. A city officer "shall receive no fees or other compensation except the salary fixed prior to his election." Sec. 62.09 (6) (d), Stats. Any payment to a city officer in excess of compensation fixed by ordinance is illegal. *Woods v. Village of La Grange Park,* 299 Ill. App. 1, 19 N. E. (2d) 406. This court has held that compensation paid to a city employee in excess of his salary is illegal and may be recovered. *Milwaukee v. Binner,* 158 Wis. 529, 149 N. W. 211; *Milwaukee v. Reiff,* 157 Wis. 226, 146 N. W. 1130. With greater reason, in view of the express statutory provision next above referred to, a sum paid to a city officer in excess of his salary can be recovered.

*By the Court.*—The judgment of the circuit court so far as it dismisses the complaint is affirmed; but so far as it dismisses the counterclaim it is reversed with directions to enter judgment on the counterclaim for the amount demanded therein.