12 So.2d 343
**JEFFERSON COUNTY v. CASE.**
**6 Div. 113.**

Supreme Court of Alabama.
Feb. 25, 1943.

Clarence Mullins and Harvey Deramus, both of Birmingham, for appellant.

Coleman, Spain, Stewart & Davies and H. H. Grooms, all of Birmingham, for appellee.

58

GARDNER, Chief Justice.

Plaintiff, George I. Case, Jr., in his suit instituted in January, 1941, recovered a judgment against Jefferson County for a portion of the sum claimed as "back salary" while employed in the office of the Tax Collector for said County, and from this judgment, defendant prosecutes this appeal.

Plaintiff's employment in the office began in 1928 and terminated November 1, 1936, when he resigned.

Originally his salary was by resolution of the County Commission fixed at $150 per month, but by subsequent resolution was reduced to $135 per month, effective August 1, 1932. In June, 1933, the County Commission adopted another resolution making a further reduction of ten per cent to remain in force for the three months of July,

August and September, 1933. Thereafter plaintiff received a monthly salary of $121.-50 with the exception of the periods wherein he was required to take a ten-day leave of absence without pay, a resolution applicable to all alike employed in various specified departments of the county.

█ It appears that the ten per cent reduction was not renewed by appropriate formal resolution, and in June, 1938, the Commission by resolution attempted to amend nunc pro tunc its minutes of September 12, 1933, so as to show the passage of a resolution as of that date continuing the reduction in salary of ten per cent to such a time as the Commission might determine that the financial condition of the County justified the elimination. But no matter of record is shown justifying an amendment nunc pro tunc and of consequence such amendment must be considered as legally ineffective. Jeffers v. Wharton, 240 Ala. 21, 197 So. 358.

Plaintiff therefore contends that as the County Commission speaks through its records, there was no ten per cent reduction following the three months provided for in the resolution of June 23, 1933, and that his salary was due him at the rate of $135 per month and no less, and that the ten days leave of absence without pay was likewise unauthorized.

After the passage of the resolution which made effective the ten per cent reduction, plaintiff received a monthly salary of $121.-50, with exception of the periods when he was required by duly adopted resolution to take the ten-day leaves of absence without pay. During each of the months involved, plaintiff filed a claim with the County Commission on or about the last day of each of the months wherein he claimed the sum actually paid to him as and for salary for that particular month and received a check or voucher with the following endorsement thereon, which he signed: "The payment of this voucher is accepted in full settlement for services rendered as herein described." And it further appears that for each of the months involved, the payroll was made up by the Tax Collector, submitted to the County Commission, and each was approved by the Commission by resolution duly adopted, and in each such payroll the salary of Plaintiff was there stated and the sum so stipulated was the amount actually received by plaintiff for services rendered for that particular month and so accepted by him.

In 1932 Jefferson County's indebtedness was within and less than the constitutional debt limit, but for the year 1933 and each subsequent year, the County's indebtedness has continuously been beyond such debt limit and the steadily declining receipts of the County are made to appear.

The argument of counsel for the respective parties, in well prepared and helpful briefs, has taken a wide range. But, in view of our recent holding in answer to an inquiry from the Court of Appeals in State ex rel. Mantell v. Baumhauer, 12 So.2d 326 (here re-affirmed, State ex rel. Hyland v. Baumhauer, Ala.Sup., 12 So.2d 342[1]), and on further study of the authorities there cited, we think our discussion here may be brought within a narrow compass.

Plaintiff relies in large part upon the principle this Court has recognized that the acceptance of less compensation by a public officer for his official services than that established by law does not estop that official from subsequently recovering the just and due legal compensation. Hamilton v. Edmundson, 235 Ala. 97, 177 So. 743.

This rule was established by the Court based upon the theory that it is against public policy there should be anything connected with such official duties bordering upon barter or trade as to such office and upon the iurther theory such public official should be able to render service free from fear of diminution in compensation which had been fixed by law. State Tax Commission v. Smith, 188 Ala. 432, 66 So. 61, 43 Amer. Juris. 147.

Illustrative of the evils to follow, if public office is to be made the subject of traffic, is the case of Robertson v. Robinson, 65 Ala. 610, 39 Am.Rep. 17, where the Court observed that the office then in question was "a place of public trust, in which the public have high interests, involving the performance of public duties, and which can not be made the subject of traffic, and can not become the matter of trade and bar-, gaining."

█ But the effect of our holding in State ex rel. Mantell v. Baumhauer, supra, was to limit the court-made rule above to public officers, as such, and a declination to extend that rule to one who may merely hold a position of public employment.

The question of prime importance therefore, here to be considered, is whether or not plaintiff was a public officer within the meaning of the above noted rule.

In many instances, of course, no difficulty is presented in determining such a question, as in case of the Tax Collector himself and other such official positions of high public trust and responsibility, created by the legislature with a fixed compensation and term of office; and as to some holding important, but subordinate positions, the legislative intent is clear.

Illustrative is Scruggs v. State, 111 Ala. 60, 20 So. 642, 643, relating to the chief clerk in the office of the probate judge appointed pursuant to the statute and whose "power is but little less than that of the judge himself." And in Montgomery v. State ex rel. Enslen, 107 Ala. 372, 18 So. 157, some stress was laid upon the fact as to whether or not there was a fixed tenure of office.

In Jeffers v. Wharton, 240 Ala. 21, 197 So. 358, there was no tenure of office. But the legislative act in question did create an important and indeed a necessary office, that of a clerk of the newly established court with a salary maximum limitation of $1500, the exact amount to be determined, however, by the Commissioner's Court. The duties of the clerk, all of important public interest, were defined by the act and a bond for faithful performance of his duties was required, though his tenure of office was left to the discretion of the appointing power, the judge of the court. Yet we think a consideration of the entire act discloses that the conclusion reached that he was a public officer was entirely correct.

Though the case of Jefferson County v. O'Gara (cited by plaintiff), 29 Ala.App. 281, 195 So. 267, (Court of Appeals) does not appear here to have been reviewed upon the merits (Jefferson County v. O'Gara, 239 Ala. 3, 195 So. 277), yet there are many distinguishing features between that case and the one here considered, especially in view of the fact that the plaintiff in that case was in effect the License Commissioner of the Bessemer territory.

These illustrations serve to demonstrate that many factors are to be considered in determining the question at hand, and numerous authorities are cited in the annotated notes in 53 A.L.R. 595 et seq., and 118 A.L.R. 1458 et seq., which serve a like purpose.

---

[1] Post, p. 71.

To here review these authorities would extend the opinion to undue length and serve no useful purpose. We have carefully considered many of them. Judge Cooley, in People ex rel. Throop v. Langdon, 40 Mich. 673, makes the following observation on the question: "The officer is distinguished from the employee in the greater importance, dignity and independence of his position; in being required to take an official oath, and perhaps to give an official bond; in the liability to be called to account as a public offender for misfeasance or nonfeasance in office, and usually, though not necessarily, in the tenure of his position. In particular cases other distinctions will appear which are not general."

In determining whether or not one was a public officer, authorities have considered the fact that no bond nor official oath was required. And other cases demonstrate that there are many elements to be taken into account. In State ex rel. Mantell v. Baumhauer, supra, we recognized the fact that some of the authorities extend the rule to those holding positions of employment in public service whether public officers or not, but we declined to so extend the rule and adhere to that view.

All elements considered, we are persuaded plaintiff was not a public officer within the meaning of the above quoted rule.

Plaintiff insists he was Deputy Tax Collector. There is no statute which specifically created such an office. The statute upon which plaintiff relies (§ 3051, Code of 1923, Title 51, § 190, Code of 1940) authorizes the Tax Collector to appoint deputies for whose acts he shall be held responsible. If there is any statute requiring an official oath or the execution of a bond by any one of his deputies it has escaped our attention. Their duties are undefined by the statutes and there is no fixed compensation or tenure of office. His compensation was fixed by the County Commission under authority of the Local Act (Local Acts 1915, p. 374) and by General Acts of 1927 (General Acts 1927, p. 499), which authorizes the Commission to provide sufficient "clerical and other assistance to, and deputies of the said officers, and to fix their compensation." The latter act is to like effect, to "fix the salary or compensation of all deputies, assistants, clerks, or other employees" in the office of the Tax Collector. The very language of these acts indicates the legislative mind, that the deputies are classed with "other employees" and with other clerical help in these various offices.

Though plaintiff was deputy collector, it is not clear to what extent his duties differed from that of the chief clerk in the office or other clerical assistants. He kept the books and disbursed the money received and collected, and, as stated by him, he had "other clerical duties there in the office which had to do with making up the daily cash sheets and keeping a record of all collections. * * * I performed clerical duties or any other duties that Mr. Hamilton requested of me." The testimony of plaintiff himself strongly indicates that he considered he held a clerical position, perhaps one of some more importance than others in the office, but a clerical position nevertheless.

We conclude, therefore, plaintiff held a position of employment and was of consequence subject to the principle of waiver or estoppel, (Mantell case, supra), and we think that principle may well be applied to plaintiff's case.

He began his service at a salary of $150 per month, and in 1932 that was reduced to $135 per month. He held no tenure of office, and he was aware of the fact he was subject to dismissal at any time. True, his appointment was by the Tax Collector, but under the law the County Commission held the purse strings as the matter of compensation was solely within its hands.

In speaking of the enforced ten-day vacation without pay, plaintiff, testifying as to acceptance of the reduced sum, stated: "I had to take it! that or else."

We have heretofore repeated the fact that plaintiff each month receipted for his salary in full for the services rendered. True, the resolution reducing the salary by ten percent for three months was not by formal resolution renewed, but plaintiff knew the reduction was continued in force for the payroll for each month went to the County Commission and was duly approved by the Commission, showing the amount payable to plaintiff at the reduced sum.

Counsel for plaintiff makes a distinction between this case and the Mantell case because in the latter the firemen had agreed to accept a reduced salary rather than a reduced force, and the budget of the City of Mobile so arranged. But we think the distinction is too narrowly drawn. True, there was here no express agreement, but one may well be implied from the surrounding facts.

■ The County Commission was under duty to balance the budget of the County (Title 12, § 14, Code of 1940), and presumably the authorities were endeavoring to discharge their duty in that respect. It is a matter of common knowledge that during the years here involved, 1933 to 1935, the economic depression was in full force and all governmental agencies were attempting to balance their budgets to conform to declining revenues. The figures offered in evidence clearly demonstrate the sharp decline in receipts for Jefferson County. No formal agreement to take less or reduce the force was necessary. The emergency of the situation spoke with sufficient force.

The necessity of the times called for the one or the other. The County was in fact plaintiff's master, so far as tenure of service was concerned, as it had full control of matters of compensation. Plaintiff's evidence discloses he had full knowledge of the situation. He and those in the office spoke to their superior about the ten-day enforced vacation. But no protest was made to the County Commission concerning any reduction in pay, either as to the ten percent reduction which continued or as to the vacation reduction. On the other hand, plaintiff filed a verified claim each month for the amount of salary for that month. It recited it was for the services for that month and we have hereinabove noted plaintiff's receipt to like effect and in full for services rendered.

Plaintiff's testimony discloses that he realized, and indeed common sense would dictate, that had protest been made at the time and when the nation was in the grasp of a great financial depression, a reduction in clerical force would follow and that his own position would be in peril. As was generally known it was not so much a question of reduced salary, but of employment and any salary at all. A protest would doubtless have produced a readjustment of clerical help, a fact this plaintiff must have known. And it is clear enough also had plaintiff interposed objection the Commission would have discovered the oversight in its failure to have its records formally show the continued reduction in pay. But no protest is made. Plaintiff acquiesces in the reduction and each month by formal resolution his reduced salary is approved and accepted.

In State ex rel. Mantell v. Baumhauer, supra, we cited approvingly the Wisconsin case of Altenberg v. Superior, 228 Wis. 272, 280 N.W. 342, 345, 118 A.L.R. 1452. The following excerpt from the opinion in that case is here much in point:

"It would be unjust to permit the men now to protest a situation which could have been so readily corrected at an earlier date by action of the board or by some other method of adjusting expenditures. There was no fraud or deceit practiced, causing the men to forego their right to the full salary, if they intended to insist upon it and not to waive it. This compels the conclusion that their waiver of this right, pay day after pay day for three years, was voluntary, and that they willingly assumed their portion of the burden which the depression laid upon their community.

\*     \*     \*     \*     \*     \*

"The failure of the plaintiffs to protest and the acceptance by them of checks without protest during all of these years impels the holding that the plaintiffs are now estopped to claim the full amounts of their salaries. This is not a case where one employee or officer has been singled out, but one in which the salary reductions applied equally to all city employees and were made necessary by a nation wide depression with which we are all quite familiar. It is our conclusion that the plaintiffs may not, under the circumstances, justly recover the salary reductions withheld by the city."

■ We adopt this language as our own and as applicable to the instant case. It is in harmony with our views as expressed in the Mantell case and we feel that further elaboration is unnecessary.

Whether our decisions would call for a different conclusion even in case of a county officer, in view of the matter of debt limit of the county and the great financial emergency then existing, is a question not necessarily here involved and is left undetermined. Mantell case, supra; Brown v. Gay-Padgett Hardware Co., 188 Ala. 423, 66 So. 161. The holding is confined to the case in hand, that is the plaintiff was not a county officer and not within any rule as to public policy herein discussed.

Our conclusion is that plaintiff is estopped by his conduct to now, at this late day, (four years after his resignation), claim pay for services rendered for which he has executed a full release and without the slightest protest. Certainly no rule of public policy is inconsistent with this conclusion.

It results that in our opinion plaintiff was not entitled to recover and that judgment should here be entered for the defendant. It is so ordered.

Reversed and rendered.

All Justices concur.

